JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| (b)  County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
         Plaintiff

☐ 2  U.S. Government
         Defendant

☐ 3  Federal Question
         *(U.S. Government Not a Party)*

☐ 4  Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
         Proceeding

☐ 2  Removed from
         State Court

☐ 3  Remanded from
         Appellate Court

☐ 4  Reinstated or
         Reopened

☐ 5  Transferred from
         Another District
         *(specify)*

☐ 6  Multidistrict
         Litigation -
         Transfer

☐ 8  Multidistrict
         Litigation -
         Direct File

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: |
|---|---|
| | Brief description of cause: |

| VII.  REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes   ☐ No |
|---|---|---|---|

| VIII.  RELATED CASE(S) IF ANY | *(See instructions):* | | |
|---|---|---|---|
| | | JUDGE _____ | DOCKET NUMBER _____ |

DATE _____                                  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DUNMORE SCHOOL DISTRICT**                     :
300 West Warren Street                          :
Dunmore, Pennsylvania 18509                     :
                                                :
                    Plaintiff                   :
          v.                                     :
                                                :
**PENNSYLVANIA INTERSCHOLASTIC**                :
**ATHLETIC ASSOCIATION**                        :   NO.
550 Gettysburg Road                             :
P.O. Box 2008                                   :
Mechanicsburg, Pennsylvania 17055-0708          :
                                                :
                    Defendant                   :

## <u>NOTICE OF REMOVAL OF CIVIL ACTION</u>

TO:   UNITED STATES DISTRICT COURT FOR THE MIDDLE
      DISTRICT OF PENNSYLVANIA

      Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant

Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA") hereby

removes the above-captioned action from the Court of Common Pleas of

Lackawanna County, Pennsylvania, to the United States District Court for

the Middle District of Pennsylvania.  In support of this removal, Defendant

states as follows:

      1.    On or about June 19, 2020, Plaintiff initiated a civil action

against Defendant PIAA by filing a Complaint in the Court of Common

Pleas of Lackawanna County.  The matter was docketed in the Court of Common Pleas at Number 2020-cv-2417.

2.    As set forth therein, the Complaint generally arises out of PIAA's decision to reclassify the Plaintiff's girls basketball program from Class 3A to Class 4A for the 2020-2021 and 2021-2022 school years "in violation of plaintiff's constitutional rights to due process and the equal protection of the laws…" *See* introductory paragraph of Complaint.

3.    As averred in Paragraph 33 of the Complaint, Plaintiff alleges that PIAA violated Plaintiff's right to due process under the 14th Amendment of the U.S. Constitution. *See* Complaint at ¶ 34

4.    As averred in Paragraph 34 of the Complaint, Plaintiff alleges that PIAA violated Plaintiff's right to equal protection under the 14th Amendment of the U.S. Constitution. *See* Complaint at ¶35.

5.    Because Plaintiff seeks relief on claims arising out of the Constitution of the United States and Federal Statutes, this Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331.

6.    Accordingly, this action is properly removed to this Court under 28 U.S.C. § 1441(a) and (c)(1) setting forth the claims for violation of federal law.

7.     As required by 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days after Defendant's receipt of the Complaint setting forth the claims of federal law.

8.     A copy of this Notice of Removal is being filed with the Prothonotary of the Court of Common Pleas of Lackawanna County, Pennsylvania and served upon all parties in accordance with 28 U.S.C. § 1446(d).

9.     Defendant files with this Notice of Removal a copy of all process and pleadings served upon it in the state court action prior to the filing of this Notice of Removal (*see* Exhibits A, B, C, and D).

WHEREFORE, Defendant hereby removes this action from the Court of Common Pleas of Lackawanna County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania.

McNEES WALLACE & NURICK LLC

By___ s/Carol Steinour Young_____
        Alan R. Boynton, Jr., PA ID 39850
        aboynton@mcneeslaw.com
        Carol Steinour Young, PA ID 55969
        csteinour@mcneeslaw.com
        Dana W. Chilson, PA ID 208718
        dchilson@mcneeslaw.com
        100 Pine Street, P.O. Box 1166
        Harrisburg, PA  17108-1166
        (717) 232-8000

Dated:  June 29, 2020                *Attorneys for Defendant*

3

**EXHIBIT A**

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Lackawanna _____ County

| For Prothonotary Use Only: |
| Docket No: |

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N  A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: Dunmore School District | Lead Defendant's Name: Pennsylvania Interscholastic Athletic Assoication |

| **Are money damages requested?** ☐ Yes  ☒ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☐ outside arbitration limits |

| **Is this a *Class Action Suit*?** ☐ Yes  ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes  ☒ No |

Name of Plaintiff/Appellant's Attorney:  Matthew D. Dempsey, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:**  Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.***  If you are making more than one type of claim, check the one that you consider most important.

**S E C T I O N  B**

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

**Lenahan & Dempsey, P.C.**
By: Matthew D. Dempsey, Esquire
I.D. No. 34379
Lenahan & Dempsey Professional Building
Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: mdd@lenahandempsey.com

Attorneys for Plaintiff

| | |
|---|---|
| **DUNMORE SCHOOL DISTRICT** : | IN THE COURT OF COMMON PLEAS |
| 300 West Warren Street : | OF LACKAWANNA COUNTY |
| Dunmore, Pennsylvania 18509 : | |
| : | CIVIL ACTION – LAW |
| Plaintiff : | |
| v. : | |
| : | |
| **PENNSYLVANIA INTERSCHOLASTIC** : | |
| **ATHLETIC ASSOCIATION** : | NO. |
| 550 Gettysburg Road : | |
| P.O. Box 2008 : | |
| Mechanicsburg, Pennsylvania 17055-0708 : | |
| : | 20 CV |
| Defendant : | 2417 |

## NOTICE

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Northern Pennsylvania Legal Services
507 Linden Street, Suite 300
Scranton, PA 18503-1631
(570) 342-0184

*PA. Lawyer Referral Service*
P.O. Box 1086-100 South Street
Harrisburg, PA   17108
(800) 692-7375   (570) 238-6715

**Respectfully submitted:**

LENAHAN & DEMPSEY, P.C.

By: _____

MATTHEW D. DEMPSEY, ESQUIRE

2

**Lenahan & Dempsey, P.C.**
By: Matthew D. Dempsey, Esquire
I.D. No. 34379
Lenahan & Dempsey Professional Building
Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: mdd@lenahandempsey.com

                                    Attorneys for Plaintiff

| | |
|---|---|
| **DUNMORE SCHOOL DISTRICT**<br>300 West Warren Street<br>Dunmore, Pennsylvania 18509<br><br>Plaintiff<br><br>v.<br><br>**PENNSYLVANIA INTERSCHOLASTIC**<br>**ATHLETIC ASSOCIATION**<br>550 Gettysburg Road<br>P.O. Box 2008<br>Mechanicsburg, Pennsylvania 17055-0708<br><br>Defendant | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY<br><br>CIVIL ACTION – LAW<br><br> |

### PLAINTIFF'S COMPLAINT

NOW COMES the plaintiff, Dunmore School District, by and through its counsel, Lenahan & Dempsey,

P.C., by Matthew D. Dempsey, Esquire, and for its Complaint against the defendant, Pennsylvania

Interscholastic Athletic Association, hereby sets forth the following averments in support of its request for

injunctive relief in accordance with the plaintiff's Petition for Preliminary Injunction and accompanying Order.

The plaintiff hereby demands injunctive relief pursuant to Pennsylvania Rule of Civil Procedure 1531, and

requests a preliminary injunction enjoining the defendant from reclassifying Dunmore from Class 3A to Class

4A for the sport of girls' basketball for the 2020-2021 and 2021-2022 school-years in violation of the plaintiff's

constitutional rights to due process and the equal protection of the laws, and in further violation of the spirit,

purpose, and plain language of the defendant's rules, regulations, policies, Constitution, and By-Laws.

The plaintiff demands the said injunctive relief in order to prevent immediate and irreparable harm that cannot be adequately compensated by money damages, because greater injury will occur from refusing to grant the injunction than from granting it, because a preliminary injunction will restore the plaintiff and the defendant to their *status quo* as it existed before the defendant's wrongful conduct, because the plaintiff is likely to prevail on the merits, because a preliminary injunction is reasonably suited to abate the defendant's offending activity, and because the public interest will be served, not harmed, if the preliminary injunction is granted.

## THE PARTIES

1.      The plaintiff, Dunmore School District ("Dunmore"), is a small school district encompassing about nine square miles that serves the Borough of Dunmore in Lackawanna County, Pennsylvania and funds the Dunmore High School girls' basketball program. Dunmore High School is located 300 West Warren Street, Dunmore, Lackawanna County, Pennsylvania 18509.

2.      The defendant, Pennsylvania Interscholastic Athletic Association ("PIAA"), is a governing body of high school and junior high sports for the Commonwealth of Pennsylvania, which has a place of business located at 550 Gettysburg Road, P.O. Box 2008, Mechanicsburg, Pennsylvania 17055-0708.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 42 Pa.C.S.A. § 5301, as the defendant is a Pennsylvania corporation subject to the Court's personal jurisdiction. Moreover, the Court has proper jurisdiction over both the subject matter and relief sought.

4.      The instant cause of action arose from injuries suffered by Dunmore within Lackawanna County and, accordingly, venue over this cause of action properly lies within the Court of Common Pleas of Lackawanna County under 42 Pa.C.S.A. § 931.

## STATEMENT OF THE FACTS

5.     PIAA determines a school district's eligibility for participation in girls' basketball and separates

districts into enrollment classes ranging from Class 1A to Class 6A for the sport of girls' basketball.

6.     PIAA assigns competition classifications per gender and sport to member schools, and enacted

the Competition Classification Formula as the method for determining which teams will move to higher

classifications based on the Formula's application to a designated two-year cycle. *See* Competition

Classification Formula, attached hereto as Exhibit 1.

7.     The Competition Classification Formula combines three factors to determine a school's

competition classification: (1) the school's student enrollment size; (2) a "success factor" score assigned by

PIAA based on **participation** in post-season tournament finishes for the prior two seasons; and (3) the number

of transfer students the school accepts by sport and gender. *See ibid. (emphasis supplied)*. According to *PIAA*

*Rules and Regulations*, "[t]hese classifications are created to promote equal opportunities for both boys and

girls to participate in interscholastic athletics and to reduce the competitive imbalance created through

competition between schools that vary significantly in enrollment." *2019-2020 PIAA Rules and Regulations*,

"Designation of Enrollment Classifications," 10, attached hereto as Exhibit 2.

8.     PIAA enacted the Competition Classification Formula "to address competitive balance" and "to

allow for schools to compete within certain parameters against similar size schools." PIAA's Competition

Classification Formula assigns success factor points based on participation in post-regular season tournament

games. Under the Formula, teams earn one (1) point for participation in an entry level game, two (2) points for

participation in a quarter-final inter-district game, three (3) points for participation in a semi-final inter-district

game, and four (4) points for participation in the championship game. *See ibid.*

9.      Under the Competition Classification Formula, PIAA assigns success factor points based on a school's participation in post-regular season tournament games. The Formula states:

> "[a]ll schools [...] have their success in post-regular season rated by the following scale.
> 1 point for **participation** in an entry level inter-district championship contest.
> 2 points for **participation** in a quarter-final inter-district contest.
> 3 points for **participation** in a semi-final inter-district contest.
> 4 points for points [sic] for **participation** in a final inter-district contest." *Ibid. (emphasis supplied).*

10.     The Formula further provides that "[i]n the previous two year cycle, schools will receive points based upon their **highest finish in post-season**. *Ibid. (emphasis supplied).*

11.     On October 2, 2019, the PIAA Board of Directors voted to change the Competition Classification Formula "to reduce the number of transfers required to trigger an increase in classification from [...] 2 in basketball [...] to [...] 1 in basketball for the two-year cycle of the competition formula, effective immediately." PIAA Bd. of Dir. 10/2/2019 Meeting Minutes, attached hereto as Exhibit 3. The two-transfer version of the athletic transfer rule was in effect during the 2018-2019 season, while the new one-transfer version of the rule became effective during the 2019-2020 season. The 2018-2019 and 2019-2020 seasons combine to form the two-year cycle at issue here.

12.     According to PIAA's By-Laws, the purpose of Article VI, which governs "Transfers, Residence, and Recruiting," is "to deter Transfers and/or recruiting which are **materially motivated** in some way by an **athletic purpose**," and "PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for **athletic purposes**." *2019-2020 PIAA Constitution and By-Laws*, Article VI, Preamble, 17 *(emphasis supplied)*, attached hereto as Exhibit 4. The Article states that "[a]ny **sport-specific transfer** after the natural break will subject the student to a possible post-season ban for one year if the transfer is after being eligible to participate of a 10th grade season and based upon the district committee or regional panel determination of eligibility." *Ibid.*

13.     Under the PIAA By-Laws, "[a] Transfer occurs in any situation in which a student seeks eligibility to participate in interscholastic athletics at a school other than the one at which the student was either enrolled or otherwise eligible." *Id.* at § 1(A). Article VI, Section 5(E) states that "[t]ransfers which are motivated in some material way by an athletic purpose are those Transfers which would not have occurred but for a desire of the student or the student's family (1) to gain additional playing time; (2) to play for a particular school, Coach, or Team; (3) to avoid either playing for, or athletic sanctions imposed by, a particular school, Coach, or Team; and/or (4) to gain increased media or college exposure." *Id.* at § 5(E).

14.     Dunmore girls' basketball was classified as 3A during the 2018-2020 classification cycle based on Dunmore's female student population of one hundred sixty-three (163). *See* PIAA Dir. of Legal Affairs 6/2/2020 Correspondence, attached hereto as Exhibit 10.

15.     PIAA assigned Dunmore eight (8) total points under the Formula for the two year cycle comprised of the 2018-2019 and 2019-2020 seasons. Dunmore received six (6) success factor points total, four (4) points for the 2018-2019 season and two (2) points for the 2019-2020 season. *See* PIAA Assistant Exec. Dir. 4/28/2020 Correspondence, attached hereto as Exhibit 5.

16.     The 2019-2020 post-season tournament was canceled partway through because of the COVID-19 pandemic. The four quarterfinals games, two semi-finals games, and championship game were never played, and Dunmore's 2019-2020 girls' basketball season ended after the second round of the tournament.

17.     Based on the 2018-2020 cycle, PIAA reclassified the Dunmore's girls' basketball team from Class 3A to Class 4A for the 2020-2022 cycle after assigning Dunmore six (6) success factor points and concluding that Dunmore accepted two (2) transfers under the Formula. *See ibid.*

18.     PIAA counted Dunmore student Olivia Lynwood as an athletic transfer under the Competition Classification Formula. Olivia's parents enrolled her at Dunmore for the 2018-2019 school year because they believed it was in Olivia's best interests to attend Dunmore and live with her mother due to social issues.

Olivia's parents were separated for the past five (5) years and had joint and equal custody of Olivia. Each parent had a separate residence; Olivia's father resided in the Scranton School District while her mother resided in the Dunmore School District. As the child of separated parents with joint and equal custody, Olivia was dually eligible for enrollment in either the Scranton School District or the Dunmore School District. Olivia did not initially intend to play basketball at Dunmore. The reason for her change in enrollment had nothing to do with athletics, and Olivia did not apply for transfer eligibility until December 3, 2018. *See* Timothy Hopkins 5/4/2020 Correspondence, attached hereto as Exhibit 6.

19.     PIAA also counted Dunmore student Emma Conte as an athletic transfer under the Competition Classification Formula. Emma Conte enrolled at Dunmore as a sophomore for the 2019-2020 school year. She had previously attended Riverside High School for her freshman year in 2018-2019. Emma's parents moved from Moosic to Dunmore in the summer of 2019. Because of this change of residence, Emma enrolled in the Dunmore School District as a sophomore for the 2019-2020 school year. Not only did Emma not transfer for athletic purposes, she did not even play basketball at her previous high school. On or about August 28, 2019, Dunmore submitted a request for an athletic transfer waiver for Emma, and the same was approved by PIAA on or about September 18, 2019. *See* Timothy Hopkins 5/4/2020 Correspondence (Exhibit 6).

20.     Under the PIAA By-Laws, "[a] Transfer occurs in any situation in which a student seeks eligibility to participate in interscholastic athletics at a school other than the one at which the student was either enrolled or otherwise eligible." *2019-2020 PIAA Constitution and By-Laws*, Article VI, § 1(A).

21.     On May 4, 2020, Dunmore timely appealed PIAA's reclassification of its girls' basketball team from Class 3A to Class 4A on the grounds that PIAA erroneously assigned Dunmore six (6) success factor points for the two-year cycle and erroneously assessed Dunmore as having received two (2) athletic transfers. *See* Timothy Hopkins 5/4/2020 Correspondence (Exhibit 6).

6

22.     PIAA denied Dunmore's appeal on May 11, 2020, stating that "[b]y virtue of Dunmore HS requesting a decision on these students eligibility to the PIAA District 2 Committee and completing the athletic transfer waiver request forms, the decisions made by the District Committee confirm the students' intent to play athletics at Dunmore High School" and that "the Competition Classification Formula and the development and application of the competition formula is a Board of Directors' approved policy that was developed by the Executive Staff, has been discussed and approved by the Competition Committee and passed by the Board of Directors." PIAA Exec. Dir. 5/11/2020 Correspondence, attached hereto as Exhibit 8.

23.     Dunmore timely appealed PIAA's denial in a May 13, 2020 letter stating that "[p]reviously we had raised several issues that were not addressed appropriately in your decision," including that "[t]he definition of participation and athletic transfers were not appropriately utilized by your committee," and that therefore Dunmore "has been unfairly and wrongfully classified" in "violation of our rights under the PIAA constitution and bylaws." Timothy Hopkins 5/13/2020 Correspondence, attached hereto as Exhibit 8.

24.     Dunmore filed an appeal with the PIAA Board of Directors on May 19, 2020 on the grounds that PIAA misapplied to Competition Classification Formula, which resulted in a violation of PIAA's Constitution and By-Laws. *See* Matthew D. Dempsey 5/19/2020 Correspondence, attached hereto as Exhibit 9.

25.     At a May 20, 2020 hearing, Dunmore presented written materials, testimony, and argument in support of is demand for relief from the application of the Competition Classification Formula. PIAA's Board of Directors denied Dunmore's appeal, and stated that "[f]or [Dunmore's] success in having **qualified to play** in the 2018-2019 inter-district championship final contest, Dunmore earned 4 points," and that "[f]or its success in having **qualified to play** in the 2019-2020 inter-district quarterfinal Contest, Dunmore [...] earned 2 points." PIAA Dir. of Legal Affairs 6/2/2020 Correspondence (*emphasis supplied*) (Exhibit 10).

26.     Conceding that "the precise language of the policy does reference participation in a particular Contest," PIAA asserted that "the policy did not contemplate that teams qualifying for a particular round in the tournament would not be able to participate in that round," which "has not happened in over 100 years of the tournament," and that therefore "[i]n light of the unique circumstances [...] it would not be unfair to Dunmore [...] to assign points based on reaching the quarterfinals of the tournament." *Ibid.* (Exhibit 10).

27.     In its June 2, 2020 decision, PIAA acknowledged that "there was **no finding that either transferred for an athletic purpose**" but stated, "that is not relevant to this policy, which applies to **all students** who change schools and then participate on a Team, not just those who transfer for athletic reasons." *Ibid. (emphasis supplied)*. PIAA further stated that "[w]hile the precise language of the policy does reference participation in a particular Contest, the policy did not contemplate that teams qualifying for a particular round in the tournament would not be able to participate in that round." *Ibid.* (Exhibit 10).

28.     The PIAA Constitution and By-Laws defines junior varsity as "[a] non-varsity level of interscholastic competition in a sport sponsored by a senior high school. This level is to be distinguished from varsity and junior high/middle school competition." *PIAA Constitution and By-Laws*, 45 (Exhibit 4).

29.     PIAA ruled that "the fact that a student played on the junior varsity rather than varsity team is "not relevant" and "not a factor under the Competition Classification Formula." PIAA Dir. of Legal Affairs 6/2/2020 Correspondence (Exhibit 10). PIAA further ruled that "the motivation behind the transfer is not a factor to consider" and "because both students did change schools and then participated on the Dunmore basketball Team, they count under the formula." *Ibid.* (Exhibit 10).

30.     Dunmore's girls' basketball team accepts all student-athletes who are interested in joining the team, and no student who tries out for the team is cut, including those students who merely join the team for socialization purposes. *See* Timothy Hopkins 5/4/2020 Correspondence (Exhibit 6).

**STATEMENT OF THE LAW**

31.     Pennsylvania Rule of Civil Procedure 1531 provides: "[a] court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice." Pa. R.Civ.P. No. 1531(a). Furthermore, "[i]n determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require." *Ibid.*

32.     Under Pennsylvania law, "[t]o obtain a preliminary injunction, a petitioner must establish that: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted." *Brayman Const. Corp. v. Com., Dep't of Transp.*, 608 Pa. 584, 601 (2011) (citing *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 646–47 (2003)).

33.     Moreover, "a party seeking preliminary injunctive relief need not establish the anticipated harm with certainty." *Weeks v. Dep't of Human Servs.*, 222 A.3d 722, 733 (Pa. 2019). Rather, "[t]he purpose of a preliminary injunction is to "prevent imminent and irreparable harm that *might* occur before the merits of a case can be heard and determined." *Ibid.* (citing *SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 500-01 (2014)) (*quotations removed*).

34.    The 14th Amendment of the U.S. Constitution protects against deprivations of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1. The Supreme Court of the United States has repeatedly affirmed that due process violations require establishing "that the legislature has acted in an arbitrary and irrational way." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984) (*citations removed*).

35.    The 14th Amendment of the U.S. Constitution protects against the denial of the equal protection of the laws. *See* U.S. Const. amend. XIV, § 1. The Supreme Court of the United States has established that satisfying the Equal Protection Clause of the 14th Amendment requires "a plausible policy reason for the classification" that "further[s] a legitimate state interest," that "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker," and that "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 10-11 (1992) (citing *U.S. R.R. Ret, Bd. v. Fritz*, 449 U.S. 166, 174, 179 (1980), *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981), and *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985)). The constitutional protections of the Equal Protection clause are violated "if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. State of Md.*, 366 U.S. 420, 425 (1961).

36.    *Black's Law Dictionary* defines 'retroactive' as: "(Of a statute, ruling, etc.) extending the scope or effect to matters that have occurred in the past." *Black's Law Dictionary*, 622 (3d Pocket Ed. 2006). *Black's* defines 'retroactive law' as "[a] legislative act that looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect," adding that "[a] retroactive law is not unconstitutional unless it […] is in the nature of an ex post facto law or a bill of attainder, […] impairs the obligation of contracts, […] divests vested rights, or […] is constitutionally forbidden." *Ibid.*

37.     Retroactive civil legislation violates due process when it is "particularly harsh and oppressive" or "arbitrary and irrational." *R.A. Gray & Co.*, 467 U.S. 717, 733 (1984) (*internal quotations omitted*). When addressing statutory retroactivity, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment," and that "[t]he presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269–70, 70 (1994). The Court made clear that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Ibid.*, at 270.

38.     Under 42 U.S.C.A. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West).

39.     The Supreme Court of Pennsylvania has previously ruled that "the activities of the PIAA constitute state action" because "[f]unds for support of the Association come partly from membership dues, largely from gate receipts from games between members, the great majority of which are held in state-owned and state-supplied facilities." *Sch. Dist. of City of Harrisburg v. Pennsylvania Interscholastic Athletic Ass'n*, 453 Pa. 495, 502 (1973) (citing *Louisiana High Sch. Athletic Ass'n v. St. Augustine High Sch.*, 396 F.2d 224, 227 (5th Cir. 1968)).

40.     Additionally, under Pennsylvania law, when separated parents with joint and equal custody reside in two different school districts, their children reside in two different school districts and are dually eligible for enrollment in either district. *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 579 (Pa. Commw. Ct. 2012).

**ARGUMENT**

41.. The Court should grant Dunmore's requested injunctive relief in accordance with this Complaint, Dunmore's Petition for Preliminary Injunction, and the accompanying proposed Form of Order to enjoin PIAA from changing Dunmore's competition classification for the sport of high school girls' basketball from Class 3A to Class 4A for the 2020-2021 and 2021-2020 school-years because such injunctive relief is necessary to prevent Dunmore from suffering imminent and irreparable harm that cannot be compensated through damages. Dunmore will suffer greater injury if the Court refuses to grant the injunction than if the Court grants it, because the injunction will restore Dunmore and PIAA to their *status quo* as it existed before the alleged wrongful conduct, because Dunmore is likely to prevail on the merits, because an injunction is reasonably suited to abate PIAA's offending activity, and because the public interest will be served, not harmed, if the injunction is granted.

42. PIAA's arbitrary and irrational conduct unfairly and unlawfully deprived Dunmore of its guaranteed constitutional rights. Granting Dunmore's requested injunctive relief and issuing a preliminary injunction is necessary to prevent Dunmore's current and future irreparable injuries, and because these harms cannot be adequately compensated through money damages.

43. Dunmore has suffered and will continue to suffer the unlawful and injurious deprivation of its guaranteed rights if the Court refuses to issue a preliminary injunction, whereas granting Dunmore's Petition for Preliminary Judgment will effectively combat and/or eliminate the harm complained of, without causing any injury to PIAA. Therefore, greater injury will occur from refusing to issue Dunmore's requested preliminary injunction than from granting it.

44. The injunctive relief Dunmore seeks will restore Dunmore and PIAA to their *status quo* as it existed before PIAA's wrongful conduct in reclassifying Dunmore's girls' basketball program, namely by

12

maintaining and restoring Dunmore's Class 3A classification. Restoring Dunmore's 3A classification will restore the situation that existed before PIAA's wrongful conduct.

45. Dunmore is likely to prevail on the merits because PIAA's interpretation and application of the Competitive Classification Formula were arbitrary and irrational, and PIAA's adopted means of serving its interest in competitive balance were arbitrary, unfair, and not rationally related to the interest. PIAA's actions therefore unlawfully denied Dunmore of its constitutional rights of due process and the equal protection of the laws. PIAA's actions plainly meet the elements of the laws identified in the plaintiff's Petition and Complaint because PIAA violated Dunmore's due process and equal protection rights in an arbitrary and irrational way that flies in the face of the spirit, purpose, and plain language of the PIAA's Competitive Classification Formula, Constitution, and By-Laws.

46. Dunmore is likely to succeed on the merits of this case because PIAA violated Dunmore's guaranteed rights under the 14th Amendment's due process clause, and the 14th Amendment's equal protection clause, giving rise to a claim for deprivation of constitutional rights. Even if PIAA's interest in deterring transfers materially motivated by an athletic purpose is legitimate, PIAA has retroactively applied and enforced its rules and regulations through unfair and arbitrary means that do not rationally serve the underlying purpose. Crucially, Dunmore was provided insufficient notice and was not given opportunity to comport its conduct in accordance with PIAA rules and regulations, in violation of Dunmore's due process rights against the arbitrary and unfair exercise of government power.

47. PIAA arbitrarily and irrationally interpreted and applied the athletic transfer provision of the Competition Classification Formula to classify two students who transferred to Dunmore as athletic transfers. PIAA's unfair and unreasonable interpretation and application of the Formula improperly classifies students who change schools for non-athletic purposes, and subsequently participate in sports, as athletic transfers, even where, as here, those students were not motivated by any athletic purpose in changing schools. In doing so,

PIAA acted in an unconstitutionally arbitrary and irrational fashion, and PIAA's means of interpreting and enforcing the Competition Classification Formula's athletic transfer provision bears no rational relationship to the spirit, purpose, and plain meaning of the rule.

48.     By interpreting the athletic transfer provision to include all students who change schools and subsequently participate in sports, including those change schools for wholly non-athletic reasons, PIAA has caused the relationship between its stated purpose and its means of effectuating that purpose to become arbitrary, irrational, attenuated, and particularly unfair to Dunmore, violating Dunmore's constitutionally-guaranteed rights to due process and equal protection of the law.

49.     PIAA's claims that "[b]y virtue of Dunmore HS requesting a decision on these students eligibility to the PIAA District 2 Committee and completing the athletic transfer waiver request forms, the decisions made by the District Committee confirm the students' intent to play athletics at Dunmore High School." PIAA Dir. of Legal Affairs 6/2/2020 Correspondence. However, requesting eligibility determinations and completing waivers reveals nothing about a student's intent and motivations in changing schools, and do not prove that a student was materially motivated by athletic purposes. Dunmore's eligibility requests merely show Dunmore's good faith efforts to comply with PIAA policies.

50.     According to PIAA's By-Laws, the purpose of Article VI governing "Transfers, Residence, and Recruiting" is "to deter Transfers and/or recruiting which are **materially motivated** in some way by an **athletic purpose**." *PIAA By-Laws*, Article VI, Preamble, 17 (*emphasis supplied*). Contrarily, with respect to the application of the Competition Classification Formula to Dunmore, PIAA stated "the motivation behind the transfer is not a factor to consider" and "because both students did change schools and then participated on the Dunmore basketball Team, they count under the formula." PIAA Dir. of Legal Affairs 6/2/2020 Correspondence.

51.     Because PIAA retroactively applied the October, 2019 Competition Classification Formula rule change to the 2018-2019 season, Dunmore did not know the rule at the time it acted and did not have opportunity to comply with the rule, thereby violating Dunmore's due process rights. Furthermore, because the 2019-2020 post-season tournament was canceled partway through, and because the games worth the most number of success factor points were never played, teams that otherwise would have been moved to a higher classification were not given the opportunity to do so, in violation of Dunmore's right to the equal protection of the laws.

52.     PIAA must not regulate athletically-motivated transfers by classifying all transfer students who subsequently participate in athletics as athletic transfers under the Competition Classification Formula. Students who change schools for non-athletic purposes, such as social or academic reasons, are not materially motivated by an athletic purpose. If such students then choose to participate in athletics to build social skills, make friends at a new school, or enjoy other benefits of high school athletics, the fact remains that those students were not motivated by an athletic purpose in changing schools. A subsequent decision to join a sports team does not retroactively change a student's material motivations for enrolling at a new school. Accordingly, PIAA should not classify such students as athletic transfers. PIAA therefore attempted to effectuate its claimed interest in competitive balance through arbitrary, unfair, and over-broad means not rationally related to its interest.

53.     PIAA's determination that "the fact that a student played on the junior varsity rather than varsity team is not relevant" and "not a factor under the Competition Classification Formula" fails to recognize the distinction between junior varsity and varsity transfers, especially in cases where the junior varsity and varsity teams do not practice together. PIAA Dir. of Legal Affairs 6/2/2020 Correspondence. Conversely, PIAA makes a clear distinction between junior varsity in its By-Laws, which defines junior varsity as "[a] non-varsity level of interscholastic competition in a sport sponsored by a senior high school. This level is to be distinguished

from varsity and junior high/middle school competition." *PIAA Constitution and By-Laws*, 45. By definition, PIAA recognizes that junior varsity is a separate division from varsity basketball. However, PIAA's method of determining athletic transfers based on eligibility forms fails to take that distinction into consideration. Even though neither student-athlete identified by PIAA had any impact whatsoever on the competitive balance of Dunmore's natural classification, PIAA assigned Dunmore two (2) athletic transfer points under the Competition Classification Formula.

54.    Because PIAA's unfair application of the rule disproportionately harmed Dunmore, PIAA, a state actor, violated Dunmore's guaranteed right to equal protection of the laws. PIAA's interpretation and application of the Competition Classification Formula here is arbitrary, unfair, and effectuated through irrational means that do not serve the underlying purpose. If PIAA has a valid interest in fostering competitive balance, its reclassification of Dunmore is not rationally related to serving that interest.

55.    PIAA miscalculated Dunmore's success factor score for the 2018-2020 cycle and improperly applied the success factor provision of Competition Classification Formula. PIAA's Board of Directors ruled that "[f]or [Dunmore's] success in having qualified to play in the 2018-2019 inter-district championship final contest, Dunmore earned 4 points," in order to conclude "[f]or its success in having qualified to play in the 2019-2020 inter-district quarterfinal Contest, Dunmore [...] earned 2 points." PIAA Dir. 6/2/2020 Correspondence. But, this contradicts the plain meaning of PIAA's Formula. Under the Formula, Dunmore received "4 points for points [sic] for **participation** in a final inter-district contest." PIAA Competitive Classification Formula (*emphasis supplied*). The meaning of the Formula is clear: Dunmore received four (4) points for participation in the final inter-district contest of the 2018-2019 contest. PIAA now says Dunmore earned these points for "having qualified to play in" the championship game, but the Formula plainly says that Dunmore earned those points for "participation in" the championship game. PIAA improperly and retroactively

changed the plain meaning of the rule by announcing an underlying purpose that alters the only reasonable reading to the rule.

56.     Under the language of the Formula, Dunmore should not receive two (2) points for the quarter-finals because Dunmore never participated in the quarter-finals and cannot be said to have participated in a game that was never played. Should PIAA wish to amend the Formula to award success factor points for qualification, not participation, PIAA can do so if it provides adequate notice to members schools and reasonable opportunity to conduct their actions in accordance with the rule. But, PIAA cannot retroactively change the plain meaning of the rule by announcing a new and unstated purpose underlying the rule.

57.     Furthermore, PIAA miscalculated Dunmore's total number of transfer students and misapplied the athletic transfer provision of the Competition Classification Formula. PIAA incorrectly classified Dunmore students Olivia Lynwood and Emma Conte as athletic transfers under the Formula.

58.     Under the PIAA By-Laws, "[a] Transfer occurs in any situation in which a student seeks eligibility to participate in interscholastic athletics at a school other than the one at which the student was either enrolled or **otherwise eligible**." *2019-2020 PIAA Constitution and By-Laws*, Article VI, § 1(A), 17 (*emphasis supplied*). Dunmore student Olivia Lynwood was "otherwise eligible" under this provision to enroll in the Dunmore School District. Olivia's parents had joint and equal custody of Olivia and had separate residences (Scranton and Dunmore). So, Olivia was dually eligible for enrollment in either the Scranton School District or the Dunmore School District because, as the child of separated parents with joint and equal custody, Olivia resided in both school districts. *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 579 (Pa. Commw. Ct. 2012). Moreover, Olivia Lynwood's parents enrolled her at Dunmore because they felt doing so was in Olivia's best interests due to social issues, and her enrollment at Dunmore High School was not motivated in any way by any athletic purpose. Because Olivia was eligible for enrollment in the Dunmore School District, no transfer

occurred under the PIAA By-Laws. Therefore, PIAA misclassified Olivia Lynwood as a transfer student, and Dunmore was improperly assigned one (1) athletic transfer point under the Formula.

59. Similarly, PIAA improperly counted Dunmore student Emma Conte as an athletic transfer. Emma Conte was not an athletic transfer under PIAA's By-Laws because her transfer to Dunmore was not motivated in any way by an athletic purpose. Emma attended Riverside High School for her freshman year of high school in 2018-2019 where she did not play basketball. Emma's parents moved from Riverside to Dunmore in the summer of 2019, and because of this change of residence, Emma enrolled in the Dunmore School District as a sophomore for the 2019-2020 school year. *See* Timothy Hopkins 5/4/2020 Correspondence. Because Emma Conte was not materially motivated by any athletic purpose in enrolling at Dunmore, PIAA erred in counting her as an athletic transfer under the Competition Classification Formula. Because PIAA misclassified Emma Conte as an athletic transfer, Dunmore was improperly assigned one (1) point under the Formula.

60. Because Emma Conte was not an athletic transfer under PIAA By-Laws Article VI, and because Olivia Lynwood was dually eligible and therefore not a transfer at all, Dunmore did not accept any athletic transfers for the girls' basketball 2018-2020 cycle. As such, PIAA erred in assigning Dunmore two (2) total athletic transfer points. Because PIAA miscounted Dunmore's transfer student total and misapplied its Formula in an arbitrary, irrational, and unfair manner, PIAA ultimately miscalculated Dunmore's overall Formula score, and improperly reclassified the Dunmore girls' basketball team as Class 4A, when it should remain Class 3A. In addition, PIAA unlawfully altered or applied provisions of the Formula retroactively, making it impossible for Dunmore to know, understand, and comply with the rule, in violation of Dunmore's due process rights.

61. In fact, PIAA acknowledged that "there was **no finding that either transferred for an athletic purpose**" but stated, "that is **not relevant** to this policy, which applies to **all students** who change schools and then participate on a Team, not just those who transfer for athletic reasons." PIAA Dir. of Legal Affairs

6/2/2020 Correspondence (*emphasis supplied*). If the policy apples to all students who change schools for any purpose, including non-athletic purposes, then PIAA's means of effectuating its interest in competitive balance by regulating athletic transfers is over-broad and not rationally related to its claimed interest.

62.     Furthermore, PIAA changed the athletic transfer rule within the Competition Classification Formula in between the 2018-2019 season and the 2019-2020 season, squarely in the middle of the two-year classification cycle. The Formula as it existed during the 2018-2019 said that teams with six (6) points in the cycle that accepted two (2) athletic transfers in basketball would be moved up to a higher classification. The Formula was amended for the 2019-2020 season, and now says that teams with one (1) athletic transfer in basketball are moved up to a higher classification. A team with a single athletic transfer was not subject to a classification change in 2018-2019, but became subject to a classification change for the 2019-2020 period following the rule's amendment. Yet, the regulated period is the two-year cycle combining 2018-2019 and 2019-2020. Amending a rule in the middle of a two-year cycle is arbitrary, irrational, and unfair. If school districts do not know the rules, they cannot conform their actions according to the rules. Dunmore does not contest that prospectively, for the upcoming 2020-2022 classification cycle, such an amendment is within PIAA's power. Dunmore objects to PIAA's unfair efforts to retroactively regulate in such an arbitrary and irrational manner that particularly and disproportionately harms Dunmore, violating its guaranteed rights.

63.     PIAA stated that the purpose of Article VI of its By-Laws is to deter transfers materially motivated in some way by an athletic purpose. Here, however, PIAA concluded that there was no finding either student transferred to Dunmore for an athletic purpose and yet declared this "not relevant" on the grounds that the policy applies to all students who change schools and then participate on a Team, not just those who transfer for athletic reasons. These retroactive changes to policy leave Dunmore, despite its best efforts, unable to know what the rules are and how to follow them. If the purpose of the policy, as stated by PIAA in its By-Laws, is to

deter transfers materially motivated by athletic purposes, then the motivations of transfer students are both relevant and crucial to the reasonable application of the policy, despite PIAA's claims to the contrary.

64.     Conceding that "the precise language of the policy does reference participation in a particular Contest," PIAA asserted that "the policy did not contemplate that teams qualifying for a particular round in the tournament would not be able to participate in that round," which "has not happened in over 100 years of the tournament," and that therefore "[i]n light of the unique circumstances [...] it would not be unfair to Dunmore [...] to assign points based on reaching the quarterfinals of the tournament." PIAA Dir. of Legal Affairs 6/2/2020 Correspondence. Similarly, Dunmore never contemplated being assigned success factor points for games it never participated in. PIAA's retroactive announcement of the underlying purpose of its policy contradicts the only reasonable plain language interpretation of the policy, which clearly resolves this issue in Dunmore's favor. If Dunmore cannot rely on "the precise language" of PIAA policies, Dunmore cannot know or understand the meaning of such policies, and is not afforded the reasonable opportunity to comport its conduct with the rules. This leads to an irrational and arbitrary result, where Dunmore has been unfairly penalized for PIAA's failure to contemplate contingencies in drafting its policies. The Court should not permit PIAA to retroactively change the only reasonable interpretation of its policies by newly expressing an underlying purpose, as doing so makes it impossible for schools like Dunmore to know what the rules are, and how to follow them, in violation of Dunmore's constitutional rights.

65.     Moreover, the extraordinary circumstances of the COVID-19 pandemic and resulting cancelation of the championship tournament underscore PIAA's arbitrary, irrational, and unfair application of the Competition Classification Formula to Dunmore. Because of the pandemic and tournament cancelation, the quarter-finals, semi-finals, and championship games—the games worth the most success factor points— were never played. Because those games were never played, teams that otherwise might have accumulated enough points under the Formula to move up to Class 4A along with Dunmore were not reclassified. For instance, if

the Beaver Bobcats of Beaver, Pennsylvania had beaten the Tyrone Golden Eagles of Tyron, Pennsylvania in the quarterfinals, then bested the winner of the Mohawk Area and Cambria Heights quarterfinals matchup in the semi-finals and participated in the championship game, Beaver would have accumulated six (6) success factor points for 2018-2020. Because we will never know what teams would have played in the championship (which earns 4 points) Dunmore is being promoted to 4A results in a competitive imbalance—not a competitive balance—because teams that might otherwise have also been promoted will remain in 3A; this is an unfair and arbitrary application of the rule to the circumstances here. PIAA therefore violated Dunmore's right to equal protection of the laws.

66.     Injunctive relief is the best and most reasonably suited means to abate PIAA's unlawful conduct by enjoining PIAA from engaging in conduct that violates Dunmore's constitutional rights and PIAA's own Constitution, By-Laws, and Competition Classification Formula. Injunctive relief is particularly necessary in this case because damages would not adequately address Dunmore's injuries.

67.     Finally, the requested injunctive relief will serve, not harm, the public interest. Because Dunmore's girls' basketball team has a no-cut policy, it accepts all student-athletes who are interested in joining the team, including those students who merely join the team for socialization purposes. PIAA's Competition Classification Formula and its interpretation thereof harms the public interest because it implies that a girls' basketball program with any expectation of success would potentially need to restrict non-athletic transfers from joining in order to remain in its classification. This implication not only contradicts Dunmore's efforts to provide a welcoming, no-cut program that recognizes that students participate in sports for many non-athletic purposes, but also potentially hinders opportunities for students who have not violated any rule set forth by PIAA.

WHEREFORE, the plaintiff, Dunmore School District, demands injunctive relief in its favor and against the defendant, Pennsylvania Interscholastic Athletic Association, enjoining the defendant from reclassifying Dunmore from Class 3A to Class 4A for the sport of girls' basketball, in accordance with this Complaint, the plaintiff's Petition for Preliminary Injunction, and the accompanying proposed Form of Order.

Respectfully submitted,

LENAHAN & DEMPSEY, P.C.

Matthew D. Dempsey, Esquire
Attorneys for Plaintiff, Dunmore School District

Lenahan & Dempsey Professional Building, Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234

## EXHIBITS

1. Competition Classification Formula
2. 2019-2020 PIAA Rules and Regulations, 10
3. PIAA Board of Directors 10/2/2019 Meeting Minutes
4. PIAA Constitution and By-Laws (page 2, Article VI pages 17-19, junior varsity definition on page 45)
5. PIAA Assistant Executive Director 4/28/2020 Correspondence
6. Timothy Hopkins 5/4/2020 Correspondence
7. PIAA Executive Director 5/11/2020 Correspondence
8. Timothy Hopkins 5/13/2020 Correspondence
9. Matthew Dempsey 5/19/2020 Correspondence
10. PIAA Director of Legal Affairs 6/2/2020 Correspondence

## CERTIFICATE OF SERVICE

AND NOW, this 18th day of June, 2020, I, Mathew D. Dempsey, Esquire, hereby served a copy of the

foregoing Complaint via certified mail on the parties of record as follows:

**PENNSYLVANIA INTERSCHOLASTIC
ATHLETIC ASSOCIATION**
550 Gettysburg Road
P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708.

LENAHAN & DEMPSEY, P.C.

Matthew D. Dempsey, Esquire
Attorneys for Plaintiff, Dunmore School District

Lenahan & Dempsey Professional Building, Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234

24

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Lenahan & Dempsey, P.C.

Signature: _____

Name: Matthew D. Dempsey, Esquire

Attorney No: 34379

1

Made in USA

## Classification of Schools -  Preamble

The purpose of classifying schools is to allow for schools to compete within certain parameters against similar size schools. This classification process has involved using enrollment numbers to establish a school's classification that has stood the test of time for decades. However, there is general view that enrollment numbers may not clearly indicate equal competition factors and there should be additional items that are needed to be considered in the classification process to keep athletic competition in balance. With the changes in legislation and the advancement of technology that have affected types of schools that students may choose to attend, there appear to be two general types of schools: **traditional schools**, where students attend by virtue of their geographic residence, and **schools of choice**, where students choose to attend based upon their educational needs, religion, gender, legacy or technology. These schools also include academies, charters and preparatory schools. Based upon these changes in the types of schools that students may attend, consideration needs to be given to address competitive balance and the development of a formula to address this process of classifying schools.

**COMPETITION CLASSIFICATION FORMULA:** A school's competition classification will be determined by sport and gender using the following formula. All three items will be combined to determine the competition classification.

**Enrollment classification + Success factor + Athletic transfers = Competition Classification**

## #1 - Enrollment classification

All schools will be classified by enrollment of grades 9-10-11 in the odd numbered calendar years by sport and by gender. This is standard procedure.

## #2 - Success factor

All schools will have their success in post-regular season rated by the following scale.
1 point for participation in an entry level inter-district championship contest.
2 points for participation in a quarter-final inter-district contest.
3 points for participation in a semi-final inter-district contest.
4 points for points for participation in a final inter-district contest.

    A. In the previous two year cycle, schools will receive points based upon their highest finish in post-season. If a school's team achieves 6 points or greater, the school may move up 1 classification for the next classification cycle in that sport and gender based upon the number of transfers the school received under the transfer formula.

    B. If a school that participates in a higher enrollment classification obtains 3, 4, or 5 success points cumulative in the two year cycle, the school will remain in that higher enrollment classification for the next two year cycle.

## #3 – Athletic Transfers

Schools may receive transfer students without affecting their classification if the student enters their new school during the traditional natural break (8th grade to 9th grade). Any sport specific transfer after the natural break transfer will subject the student to a possible post-season ban for one year if the transfer is after being eligible to participate of a 10th grade season and based upon the district committee or regional panel determination of eligibility.

A. In the previous two year classification cycle, if a school receives 6 points in the previous classification cycle and accepts transfer students by sport and gender the school and equals or exceeds the stated number, they will move up 1 classification.

Example: (1) transfers in basketball= up 1 classification.

(3) transfers in football = up 1 classification.

B. If a school accumulates 6 points or greater in the previous cycle **and does not receive transfer students,** it will remain in their same enrollment classification for the next two year cycle.

C. A school that has moved up in class does not obtain 3, 4, or 5 success points in a cycle, but **has transfer students** equal to or exceeds the number by sport will remain up in that classification cycle for the next two year cycle.

**Appeals**

A school would be allowed to appeal its upgrade in competition classification by providing written documentation to the Executive Staff to verify that changes in their classification will not provide them with a competitive advantage over like sized schools. The school's rationale to not move up in classification must be included in the appeal documents. 

The appeal will be held upon the paperwork of all school related documents (certificates of eligibility; transcripts; attendance records; CIPPE forms; previous two year cycle team schedules and results). Documentation must be provided to the Executive Staff. If the Executive Staff makes a positive determination to accept the appeal, the appeal will end. If the Executive Staff rejects this appeal, the decision may be appealed to the Board of Directors.

**Compliance Committee**

The Compliance Committee may be appointed by the Executive Director. A Compliance Committee may also be requested by a district committee, regional panel or Board of Directors to assess possible deficiencies and weaknesses in school oversight of its athletic programs as well as possible violations of PIAA rules, regulations, policies, procedures or provisions of the Constitution and By-Laws. This committee will have full investigative authority and will be authorized to verify the eligibility of all student-athletes in complying with the provisions pertaining to student-athletes of the PIAA By-Laws. The Committee will report to a district committee, regional panel or Board of Directors, each of which may thereafter take appropriate remedial action.

2

Made in USA

# 2019-2020 PIAA

# RULES

# and

# REGULATIONS

## GENERAL CONTROL OF INTER-DISTRICT CHAMPIONSHIP CONTESTS

The PIAA Board of Directors has general control of and responsibility for all Inter-District Championship Tournaments and Contests, including PIAA Inter-District Championship (Final) Contests.

The District Committee of each PIAA District conducts and controls all District Championship Contests, subject to approval of the PIAA Board of Directors.

PIAA District qualifying procedures must conform to the Constitution, By-Laws, Policies and Procedures, and Rules and Regulations of PIAA.

PIAA Districts shall conclude all District Championship Contests in each sport no later than the deadline for the conclusion of District Championships, as established by PIAA.  In the case of emergency or extenuating circumstances, District Championships may be completed following the PIAA District Deadline, with prior approval from the Executive Director, or the Executive Director's designee.

The Executive Director, or the Executive Director's designee, has the authority and responsibility for determining preliminary, first, second, quarterfinal, and semi-final round sites for all Inter-District Championship Contests.

## DESIGNATION OF ENROLLMENT CLASSIFICATIONS

For competition purposes, PIAA classifies Teams (other than in competitive spirit) by (1) gender and (2) size of enrollment at schools. These classifications are created to promote equal opportunities for both boys and girls to participate in interscholastic athletics and to reduce the competitive imbalance created through competition between schools. that vary significantly in enrollment.

Each Team shall be placed in a class for each sport in which there is more than one class, based upon its school's enrollment as reported pursuant to ARTICLE IV, DUES AND ENROLLMENT REPORT, Section 1, Annual Dues and Enrollment Report, of the PIAA Constitution, for each odd-numbered year.  Multi-class boys' sports are classified according to total male enrollment in grades 9, 10, and 11 and multi-class girls' sports are classified according to total female enrollment in grades 9, 10, and 11. Enrollment figures shall include all Cyber Charter School and Home-Schooled Students eligible to participate on Teams at the school; all students attending an Alternative School, a Magnet School, or a Technology school who are eligible at the schools which the students would otherwise attend by virtue of their residences; and all

students attending a Charter School who are eligible at a school in the school district of their residences.

The classification shall go into effect for the next school year and remains in effect for two school years, except as hereinafter provided.

When a school is merged into, or consolidated with, another school, the classification of Teams of the surviving or new school shall be based upon the school's enrollment as affected by the merger or consolidation, measured as of the date of merger or consolidation, and effective beginning with the first sports season which starts thereafter.  When a school closes, and its students Transfer to one or more other schools, the classification of each Team at each school receiving students from the closed school shall be based upon the school's enrollment as affected by the closing, measured as of the date of enrollment of the students from the closed school, and effective beginning with the first sports season which starts thereafter.

| Sport | Classes |
|---|---|
| Baseball | -- 1A-2A-3A-4A-5A-6A |
| Basketball | -- 1A-2A-3A-4A-5A-6A |
| Competitive Spirit | -- Sm-Md-Lg or Coed Varsity Squads |
| Cross Country | -- 1A-2A-3A |
| Field Hockey | -- 1A-2A-3A |
| Football | -- 1A-2A-3A-4A-5A-6A |
| Golf | -- 2A-3A |
| Lacrosse | -- 2A-3A |
| Soccer | -- 1A-2A-3A-4A |
| Softball, Fast Pitch | -- 1A-2A-3A-4A-5A-6A |
| Swimming and Diving | -- 2A-3A |
| Tennis | -- 2A-3A |
| Track & Field | -- 2A-3A |
| Volleyball - Boys | -- 2A-3A |
| Volleyball - Girls | -- 1A-2A-3A-4A |
| Wrestling | -- 2A-3A |

## POLICY FOR DETERMINING NUMBER OF ENTRIES (QUALIFIERS) TO PIAA INTER-DISTRICT CHAMPIONSHIPS

Each PIAA District or Region that sponsors a qualifying Tournament involving at least four (4) member schools sponsoring a Team in a sport, which participates in at least 50% of the maximum permitted number of Regular Season Contests in that sport, is entitled to a minimum of one (1) entry (qualifier), per enrollment classification, to the PIAA Inter-District Championships in that sport.

Additional entries (qualifiers) are computed on a modified proportional representation basis, with the larger Districts limited to an appropriate maximum number of entries (qualifiers) to the PIAA Inter-District Championships in that sport.

## ELIGIBILITY

Prior to the beginning of a PIAA District Championship Contest, the Principal of each school involved in such PIAA District Championship Contest shall send a PIAA Senior High School Certificate of Eligibility to that Principal's District Chairman.

## COMPREHENSIVE INITIAL PRE-PARTICIPATION PHYSICAL EVALUATION (CIPPE)

Prior to the beginning of a PIAA District Championship Contest, there shall be on file with each contestant's Principal, or the Principal's designee, a completed and properly executed PIAA Comprehensive Initial Pre-Participation Physical Evaluation (CIPPE) Form, which certifies that such contestant is physically fit to commence Practice and participate in Inter-School Practices, Scrimmages, and/or Contests in the sport(s) approved by the contestant's parent.

3

Made in USA

PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.
550 GETTYSBURG ROAD, P.O. BOX 2008
MECHANICSBURG, PA  17055-0708

PIAA BOARD OF DIRECTORS' MEETING MINUTES

PIAA Board Room
Mechanicsburg, PA

Wednesday, October 2, 2019

At 4:10 p.m., Wednesday, October 2, 2019, James T. Zack, President, called the meeting of the PIAA Board of Directors to order.

## MEMBERS PRESENT

Dr. Michael A. Barber, Kennett Square .............................................................. District  1
Dr. Patrick Nugent, Spring Ford…………………………………………………………… District  1
Francis M. Majikes, Wilkes-Barre ...................................................................... District  2
Douglas M. Bohannon, Myerstown..................................................................... District  3
Patrick J. Tulley, Shillington .............................................................................. District  3
Dr. Ronald Kennedy, Mount Joy……………………………………………………… District  3
James T. Zack, Coal Township .......................................................................... District  4
Paul Leonard, Cairnbrook .................................................................................. District  5
William W. Marshall, Cresson ............................................................................ District  6
Dr. Patrick J. Mannarino, Pittsburgh.................................................................. District  7
Scott Seltzer, Pittsburgh .................................................................................... District  7
Michael Allison, Aliquippa................................................................................... District  7
Michael A. Gavlik, Pittsburgh ............................................................................ District  8
Aaron Straub, St. Marys.....................................................................................District  9
Dr. Peter P. Iacino, Sharon ............................................................................... District 10
Robert F. Hartman, Jr., Whitehall....................................................................... District 11
Michael W. Hawkins, Fort Washington............................................................... District 12
Joseph D. Sette, Warminster ............................................................................. District 12
Jeffrey D. Batzel, Loysburg
        Representing………………………………….Junior High/Middle Schools Representative
Jonathan Bauer
        Representing…………………………………….PA Principals Association Representative
S. Janell Henderson, Bedford
        Representing ........................................................... Female Parents' Representative
David A. Troxell, Catasauqua
        Representing ............................................................. Male Parents' Representative
Lee Ann Wentzel, Folsom
        Representing .........................................................................................PASA
Michael J. Craig, Mechanicsburg
        Representing ........................................................................................PSADA
Ronald J. Kanaskie, Riverside
        Representing……………………………………………………………………….PCA
James Scheirer, Mechanicsburg
        Representing……………………………………………………………………….PSBA
Catherine Foley, Pittsburgh
        Representing…………………………………………………………….Female Officials

## MEMBERS PRESENT (Continued)

Kevin J. McNamara, Montoursville
    Representing..................................................................................Male Officials
Audrey Hall, McConnellsburg
    Representing ................................................................................ Girls' Athletics
Harold A. "Hal" Griffiths, Shiremanstown
    Representing ................................................................................ Private Schools

## ADMINISTRATIVE STAFF PRESENT

Dr. Robert A. Lombardi, Executive Director ............................................... PIAA
Mark E. Byers, Chief Operating Officer ..................................................... PIAA
Melissa N. Mertz, Associate Executive Director ....................................... PIAA
Patrick B. Gebhart, Assistant Executive Director ...................................... PIAA
Jennifer S. Grassel, Assistant Executive Director .................................... PIAA
Michael L. Solomon, Esq., Director of Legal Affairs ................................. PIAA

## PROFESSIONAL CONSULTANTS

Alan R. Boynton, Jr., Esq. ................................................... PIAA Legal Counsel

## GUESTS PRESENT

Sean Kelly, Assistant Executive Director...............................................District 1
Sean P. McAleer, Director of Education ..................... Pennsylvania Catholic Conference
George B. Shue, Executive Director................................................... PSFCA

## APPROVAL OF MINUTES

On a motion by Mr. Majikes, seconded by Mr. Seltzer, it was unanimously voted to approve the Minutes of the Wednesday, July 17, 2019, meeting of the PIAA Board of Directors, as presented by the Executive Director.

## HEARING-WEST GREENE HS & ALBERT GALLATIN HS CONCERNING PROPOSED COOPERATIVE SPONSORSHIP OF A SPORT

Following a presentation by the requesting schools, on a motion by Mr. Craig, seconded by Dr. Iacino, it was voted to suspend application of Article III, Attendance, Section 10.A.6, Cooperative Sponsorship of a Sport, to accommodate a request from West Greene High School to cooperatively sponsor boys' soccer with Albert Gallatin High School even though the schools are not contiguous.

Motion passed: 26-yes; 1-no.

### APPEAL HEARING-MCKEESPORT HS REGARDING COACH'S SANCTIONS FOR RECRUITING VIOLATION

Following a presentation by the school and coach, on a motion by Ms. Henderson, seconded by Mr. Hartman, the Board of Directors unanimously voted to deny a request for relief by a coach of McKeesport High School, from the application of the mandatory suspension provision of Article VI, Section 9D, of the PIAA By-Laws, Recruiting.

### APPEAL HEARING-WISSAHICKON MIDDLE SCHOOL – SEASON AND OUT OF SEASON RULES AND REGULATIONS

Following a presentation by the school, on a motion by Dr. Barber seconded by Dr. Kennedy, it was voted to grant a request from Wissahickon Middle School to suspend application of Article XVI, Season and Out of Season Rules and Regulations, to allow an eighth grade student to participate in an out of season non-contact football event that was re-scheduled due to a scheduling conflict.

Motion passed: 16-yes; 14-no

### EXECUTIVE SESSION

At 5:15 p.m., President Zack called an Executive Session of the PIAA Board of Directors to discuss legal matters. The Board of Directors then went into Executive Session, where legal matters were discussed.

### RETURN TO REGULAR SESSION

At 5:45 p.m., President Zack returned the meeting of the PIAA Board of Directors to Regular Session.

On a motion by Mr. Hartman, seconded by Mr. Majikes, it was approved to authorize the PIAA Executive Director to initiate an inquiry further into allegations made regarding potential recruiting violations of Ss. John Neumann & Maria Goretti High School.

Motion passed: 28-yes; 2 abstained

On a motion by Dr. Barber, seconded by Dr. Iacino, it was approved that each PIAA District would pay to Headquarters, on a proportional basis, funding to assist with the high cost of legal fees incurred in recent litigation matters.

Motion passed: 28-yes; 2-no

The Board of Directors' accepted the resignation of Michael A. Gavlik as PIAA Treasurer and District VIII Chairman and congratulated him for 15 years of service to the Board of Directors. The PIAA Nominating Committee will begin the search for a replacement for the position of PIAA Treasurer.

## PROPOSED AMENDMENTS TO THE PIAA CONSTITUTION

On a motion by Mr. Marshall, seconded by Mr. Batzel, it was unanimously approved, on a **first reading basis,** to add language to ARTICLE IX, DISTRICT COMMITTEES, Section 1.G. as follows:

> Any district committee member may be removed by a vote of two-thirds of the committee at any meeting of the district committee whenever, in the judgment of the committee the best interest of the district or PIAA would be served thereby.

## PROPOSED AMENDMENTS TO THE PIAA BY-LAWS

On a motion by Mr. Hawkins, seconded by Ms. Hall, it was unanimously approved to **suspend protocol** and amend PIAA By-Laws, ARTICLE VI, TRANSFERS, RESIDENCE, AND RECRUITING, Section 2.C., to make clear that the waiver provision of Subsection 2.C. (Waiver Provision of A.  and/or B - District Committee may grant eligibility if certain situations are met") does not include a waiver of the 21 day rule, to read as follows: NOTE: 21 day rule is not subject to a waiver.  This amendment is effective immediately.

On a motion by Mr. McNamara, seconded by Mr. Seltzer, it was unanimously approved, on a **first reading basis,** to amend ARTICLE XVI, SEASON AND OUT-OF-SEASON RULES AND REGULATIONS, Section 2., Rules and Regulations A. Out of Season Activities 1to provide that schools participating in sanctioned NCAA/NFHS scheduled events may sponsor a team.  Subsection 4 was also modified, on a first reading basis, to remove the bar on use of school name and nickname by community organizations, groups or students.  The school's interscholastic athletic uniform still may not be used by community organizations, groups, or students.

On a motion by Mr. McNamara, seconded by Mr. Griffiths, it was unanimously approved, on a **first reading basis,** to amend ARTICLE XVI, SEASON AND OUT-OF-SEASON RULES AND REGULATIONS, Section 4, Mixed Gender Participation, Subsection D3, to provide that a Mixed Gender tennis Team shall play during the boys' Regular Season and Postseason.

On a motion by Ms. Hall, seconded by Mr. Kanaskie, it was unanimously approved, on a **first reading basis,** to amend language in ARTICLE XIX, JUNIOR HIGH/MIDDLE SCHOOLS, (Junior High/Middle School 7th, 8th and 9th Grade Competition) Section 3, Period of Participation B to clarify the period during which junior high/middle school students may participate to clarify that no junior high/middle school student may participate in any sport for more than three seasons in grades seven through nine, inclusive and that students may practice for and participate in only one season in each sport during each school year.

## PROPOSED POLICY AND PROCEDURES AMENDMENTS

On a motion by Dr. Iacino, seconded by Mr. Majikes, it was unanimously approved on **suspended protocol**, effective immediately, to clarify the POLICY REGARDING DISCLOSURE OF OPEN RECORDS, as set forth in the PIAA Policies and Procedures, to require persons seeking records from PIAA under the Right to Know Law to utilize the Office of Open Records-approved form for such requests.

## LEGISLATIVE REPORT

Catherine Connor of Milliron & Goodman LLC, reported to the Board of Directors on PIAA legislative matters.

## EXECUTIVE DIRECTOR'S REPORTS AND RECOMMENDATIONS

The Executive Director reported on the following subjects:

1) Compliance of those schools that were contacted regarding their not timely providing proper information for 2017 eligibility lists.

2) On a motion by Mr. Gavlik, seconded by Mr. Troxell, it was unanimously voted to approve the draft of audited PIAA Headquarters financial statements for the year ended June 30, 2019 as prepared by Boyer & Ritter; and PIAA unaudited financial statements for months ended June 30, and July 31 and August 31, 2019.

3) Discussion on Friday night football concerns as a result of two separate incidents at football games in separate areas of the state. The Executive Director provided the Board of Directors with a document titled **"Member School Security Considerations for Sporting Events"** as a starting point for member schools' security and safety considerations when hosting athletic events.

## ASSISTANT EXECUTIVE DIRECTOR'S REPORTS

Assistant Executive Director Grassel gave a status report on the following:

1) Coaches education update;

2) The September newsletter-emailed and posted to the PIAA website;

3) 2018-19 Coaches of the Year; and

4) The Secondary School Start Times Advisory Committee.

## ASSISTANT EXECUTIVE DIRECTOR'S REPORTS

Assistant Executive Director Gebhart gave a status report on the following:

1) Review of the 2019 25th Annual PIAA Officials' Convention and 30 year of recognition banquet;

2) Mr. Majikes being presented a citation issued by the PA House of Representatives recognizing the 25th Anniversary of the PIAA Officials' Convention;

3) The deadline for receipt of recommendations to officiate 2019 PIAA Fall Championships in sports of cross country, girls' volleyball, field hockey, soccer and football;

4) The online mandatory rules meetings for fall sports, which are now posted to the PIAA website and will be available until November;

5) The start of the 2019-20 PIAA Winter Sports Rules Interpretation Meetings; and

6) PIAA is now accepting nominations forms or notices for Officials' Representatives to enter on ballots: deadline for submissions is Nov. 10th.

## ASSOCIATE EXECUTIVE DIRECTOR'S REPORT

Associate Executive Director Mertz gave a status report on the following:

1) Report of eligibility lists submission;

2) The number of schools regarded to be delinquent as a result of dues not being paid on or before September 30, 2019; and

3) The reclassification process - started October 1st until October 15th, submission of enrollment numbers and timeline.

## CHIEF OPERATING OFFICER'S REPORT

The Chief Operating Officer Byers gave a status report on the following:

1) The 2019 PIAA 13th Annual Cross Country Foundation Race which hosted approximately 2,500 runners and 142 schools; and

2) On a motion by Mr. Leonard, seconded by Mr. Gavlik, it was unanimously voted to accept the use of a post-season eligibility form that may be used by District Committees to consider initial requests for waivers of post-season ineligibility.

3) Reported to the Board that Freedom High School, Bethlehem, has been accepted as the 2020 Southeast 2A regional wrestling site.



## COMPETITION COMMITTEE REPORT

On a motion by Mr. Bohannon, seconded by Mr. Seltzer, the Board of Directors voted to approve, on a **third and final reading basis,** an adjustment in the competition formula to reduce the number of transfers required to trigger an increase in classification from 5 in football and 2 in basketball, to 3 in football and 1 in basketball for the two-year cycle of the competition formula, effective immediately.

Motion passed: 21-yes; 9-no.

On a motion by Mrs. Hall, seconded by Mr. Troxell, it was unanimously voted, **on a suspended protocol basis,** to accept the clarification language of ARTICLE II, AMATEUR STATUS AND AWARDS, Section 3, Permissible Awards, to permit students to receive reasonable and necessary expenses for transportation, lodging, and/or meals incurred by the student and/or the student's parents, effective immediately

On a motion by Dr. Iacino, seconded by Ms. Wentzel, it was unanimously voted to approve an INTERPRETATION to ARTICLE VI, TRANSFERS, RESIDENCE AND RECRUITING, Section 2, In-Season Transfers, A2 of the PIAA By-Laws, to make clear that the 50% number is based upon the number of Contests on a Team's schedule while the student was part of the Team, regardless of his/her individual eligibility status during that period.

On a motion by Mr. Hawkins, seconded by Mrs. Foley, it was unanimously voted to accept the Minutes of the PIAA Competition Committee from its meeting of Wednesday, October 2, 2019.

## DISCUSSION ITEMS

On a motion by Dr. Iacino, seconded by Mr. Mannarino, it was unanimously voted to approve a policy to adjust the start date for winter sports, which will be moved to Monday of the previous week from Friday whenever Thanksgiving is late in the calendar.

Mr. Craig moved, and Mr. Bohannon seconded a motion to approve the diagonal system of control as method of officiating boys' and girls' soccer starting the fall 2020 at the varsity level when using three officials.

Motion failed: 10-yes; 19 – no.

## REQUEST OF SCHOOLS FOR APPROVAL OF
## COOPERATIVE SPONSORSHIP OF A SPORT, EFFECTIVE
## BEGINNING OF THE 2019-20 SCHOOL YEAR, WILL NOT AFFECT CLASSIFICATION

On a motion by Mr. Seltzer seconded by Mr. Gavlik, it was unanimously voted to approve the following requests for cooperative sponsorship of a sport, effective during the **2019-2020** school year (will not affect classification size of Team(s)):

**District III** – Penn Manor Junior High School & The Stone Independent Middle School (boys' and girls' soccer)

**District III- Change-** Exeter Township and Antietam High Schools to add Wyomissing High School (boys' and girls' swimming and diving)

**District III** – Upper Dauphin Area and Millersburg Area High Schools (wrestling)

**District VI** - Williamsburg and Juniata Valley Junior High Schools (football)

**District VI** – Glendale and Harmony Area Junior High Schools (girls' volleyball)

**District IX - Host Correction-** Oswayo Valley and Otto Eldred High Schools( boys' & girls' golf)

**District XII -** Science Leadership Academy and Benjamin Franklin High School (girls' lacrosse)

## REQUEST OF SCHOOLS FOR APPROVAL OF
## COOPERATIVE SPONSORSHIP OF A SPORT, EFFECTIVE
## BEGINNING OF THE **2020-21** SCHOOL YEAR, WILL NOT AFFECT CLASSIFICATION

On a motion by Mr. Bohannon seconded by Mr. Leonard, it was unanimously voted to approve the following requests for cooperative sponsorship of a sport, effective during the **2020-2021** school year (will not affect classification size of Team(s)):

**District III** – Millersburg Area and Upper Dauphin Area High Schools (boys' and girls' soccer)

**District III** – Upper Dauphin Area and Millersburg Area High Schools (JH & V football)

**District V** – Conemaugh Township and Johnstown Christian High Schools (football)

## REQUEST OF SCHOOLS FOR APPROVAL OF
## COOPERATIVE SPONSORSHIP OF A SPORT, EFFECTIVE
## BEGINNING OF THE **2020-21** SCHOOL YEAR, WILL AFFECT CLASSIFICATION

On a motion by Mr. Hawkins, seconded by Mr. Sette, it was unanimously voted to approve the following requests for cooperative sponsorship of a sport, effective during the **2020-2021** school year (will affect classification size of Team(s)):

**District XII** – West Philadelphia and William L. Sayre High Schools (boys' soccer)

## REQUEST OF SCHOOLS FOR TERMINATION OF
## COOPERATIVE SPONSORSHIP OF A SPORT,
## EFFECTIVE DURING THE **2019-20** SCHOOL YEAR

On a motion by Mr. Bohannon, seconded by Mr. Majikes, it was unanimously voted to approve the following requests to terminate cooperative sponsorships of a sport, effective for the **2019-20** school year:

**District III -** Kutztown Area and Brandywine Heights High Schools (boys' and girls' track and field)

**District III -** Mount Calvary Christian and Lancaster Mennonite (boys' and girls' golf)

**District III -** Southwestern and Delone Catholic High Schools (girls' lacrosse)

**District III -** Daniel Boone and Berks Catholic High Schools (girls' golf)

**District VII -** Western Beaver High School and Lincoln Park Performing Arts (baseball)

**District VII -** Cornell and Our Lady of the Sacred Heart High Schools (boys' and girls' cross country and boys' and girls' soccer)

**District VII -** South Side Junior High and Burgettstown Area Middle School (boys' soccer)

**District X -** Franklin and St. Patrick Junior High Schools (boys' cross country, football, boys' golf, boys' and girls' soccer, boys' and girls' track and field and wrestling)

**District XII -** Murrell Dobbins High School and Eastern Academy Charter School (competitive spirit, boys' volleyball, boys' and girls' track and field, softball, girls' soccer, boys' and girls' indoor track and field, boys' and girls' cross country, boys' and girls' bowling, girls' basketball and baseball)

**District XII -** Shoemaker and Hardy Williams Mastery Charter Schools (boys' and girls' cross country, boys' and girls' track and field)

**District XII -** Benjamin Franklin High School and Philadelphia Military Academy (girls' volleyball and baseball)

**District XII -** Pickett Mastery and Shoemaker Mastery Charter (Competitive Spirit)

<u>REQUEST OF SCHOOLS FOR TERMINATION OF</u>
<u>COOPERATIVE SPONSORSHIP OF A SPORT,</u>
<u>EFFECTIVE DURING THE **2020-21** SCHOOL YEAR</u>

On a motion by Mr. Marshall, seconded by Mr. Gavlik, it was unanimously voted to approve the following requests to terminate cooperative sponsorships of a sport, effective for the **2020-21** school year:

**District VI -** Juniata and East Juniata High Schools to terminate girls' volleyball

<u>APPROVAL OF MEMBER SCHOOL APPLICATION(S), EFFECTIVE JULY 1, 2019</u>

On a motion by Mr. Barber, seconded by Mr. Majikes, it was unanimously voted to approve the following requests for member school applications, effective July 1, 2019:

**District I -** The Glen Mills School

**District II -** Wilkes Barre Area Junior High School

<u>WITHDRAWALS OF MEMBERSHIP(S), EFFECTIVE JULY 1, 2019</u>

On a motion by Mr. Hawkins, seconded by Mr. Majikes, it was unanimously voted to approve the following withdrawal of membership requests:

**District I -**  Scott Middle School
South Brandywine Middle School

**District II -** Elmer L. Meyers Junior High School
GAR Memorial Junior High School
Solomon/Plains Junior High School

**District III-** Lancaster Mennonite School
Rowland Intermediate

     **District IX -** St. Bernard Middle School

     **District X -** Calvary Baptist Christian Academy
                   St. Patrick Junior High School
                   St. Michael School

ADJOURNMENT

James T. Zack, President, adjourned the meeting of the PIAA Board of Directors at 6:50 p.m., Wednesday, October 2, 2019.

Respectfully submitted,

*Robert A. Lombardi*

Dr. Robert A. Lombardi
Executive Director

**NEXT PIAA BOARD OF DIRECTORS' MEETING: WEDNESDAY, DECEMBER 4, 2019, AT 4:00 P.M., BOARD ROOM, PIAA OFFICE, MECHANICSBURG, PA.**

4

Made in USA



# 2019-2020
# CONSTITUTION
# and BY-LAWS

## Section 4. Withdrawal of Membership.

Requests for withdrawal of membership in PIAA must be made in writing, by the Principal of the school, to the Executive Director of PIAA, and must be accompanied by a resolution of withdrawal executed by the School Board or the Board having jurisdiction over the PIAA member school, stating the reason for withdrawal.

## ARTICLE IV
## DUES AND ENROLLMENT REPORT

### Section 1.  Annual Dues and Enrollment Report.

The annual dues of PIAA member senior high schools are based on the total enrollment of boys and girls in grades 9-11 in the senior high school and shall include all Home-Schooled Students; all students attending an Alternative School, Magnet School, or a Technology School, who are eligible at the senior high school that the students would otherwise attend by virtue of their residences; and all students enrolled in a Charter School or a Cyber Charter School who are eligible at the senior high school that the students would otherwise attend by virtue of their residences; as of the date as of which the school reports its enrollment to the Pennsylvania Department of Education (PDE) of each odd-numbered year.  The enrollment report must be filed with the PIAA Office not later than the date the Public School Enrollment Report is due to the Pennsylvania Department of Education.  The Principal and Superintendent of any PIAA member school failing to file the requested enrollment report by the aforementioned deadline shall be sent a notice of such failure and a copy of this provision.  If the enrollment report is not received within ten (10) days after the notice was sent, the school shall be assessed a fine of $1,000.  For each ten (10) days thereafter that the enrollment report is not received, the school shall be assessed an additional fine of $1,000.  No individual student-athlete nor Team from the school is eligible to participate in District and/or Inter-District Championship Contests in any sport until such report is received and such fine is paid.

Member senior high schools shall be divided each even-numbered year into four classes based on enrollment, each containing as nearly as possible an equal number of schools.

Member junior high/middle schools are all in one class.

The dues of PIAA member schools shall be established by the Board of Directors.

---

### INTERPRETATIONS

#### Section 1.  March 23, 2007

Where a student is enrolled at a Charter School, and where the public school district in which the student resides has no senior high school, the school at which the student is in full time attendance shall include the student in its calculation of enrollment.

#### Section 1.  May 27, 2004.

PIAA member schools should not include in their calculation of enrollment those students enrolled at a member Charter School that sponsors at least one interscholastic sport under the jurisdiction of PIAA.  Students enrolled at such member Charter School shall be included in the enrollment calculation of only that school.  This lack of inclusion in the PIAA member school's enrollment does not affect the eligibility of Charter School students to participate at the school that those students would otherwise attend by virtue of their residence, in those interscholastic sports not sponsored by the Charter School.

#### Section 1.  May 25, 1951.

In six-year high schools, a membership fee must be paid by both the senior and junior high/middle schools if the school has a Team which competes in both senior and junior high/middle school sports.

---

### Section 2.  When Dues are Payable.

All dues are payable at the beginning of each school year.  If dues are not paid on or before September 30 of the current

school year, a school will be regarded to be delinquent and a penalty of 25 percent of the amount due will be added to the amount of dues.  Dues with the 25 percent late payment penalty are to be paid on or before October 31 of the current school year.  After October 31 of the current school year, the membership of the delinquent school in PIAA shall lapse until such time as the dues and penalties imposed have been fully satisfied.

### Section 3.  Reinstatement of Delinquent Schools.

A school which has been delinquent for up to two years may be reinstated to membership upon payment of the back dues and penalties.  A school which has been delinquent for more than two years is required to submit a new application in order to be admitted to membership.

## ARTICLE V
## ORGANIZATION AND AUTHORITY

### Section 1.  Pennsylvania Interscholastic Athletic Association, Inc. (PIAA) Districts.

For the purposes of organization, legislation, and administration, PIAA is divided into Districts.  One or more Districts, at the discretion of the Board of Directors, may incorporate and operate under and pursuant to the Pennsylvania Nonprofit Corporation Law of 1988, as amended (or successor provisions thereof).  The PIAA Districts shall include the following counties, respectively:

**District 1** -   Bucks, Chester, Delaware, and Montgomery
**District 2** -   Lackawanna, Luzerne, Pike, Susquehanna, Wayne, and Wyoming.
**District 3** -   Adams, Berks, Cumberland, Dauphin, Franklin, Juniata, Lancaster, Lebanon, Perry, and York.
**District 4** -   Bradford, Columbia, Lycoming, Montour, Northumberland, Snyder, Sullivan, Tioga, and Union.
**District 5** -   Bedford, Fulton, and Somerset.
**District 6** -   Blair, Cambria, Centre, Clearfield, Clinton, Huntingdon, Indiana, and Mifflin.
**District 7** -   Allegheny (except the City of Pittsburgh), Armstrong, Beaver, Butler, Fayette, Greene, Lawrence, Washington, and Westmoreland.
**District 8** -   City of Pittsburgh.
**District 9** -   Cameron, Clarion, Elk, Jefferson, McKean, and Potter.
**District 10** - Crawford, Erie, Forest, Mercer, Venango, and Warren.
**District 11** -   Carbon, Lehigh, Monroe, Northampton, and Schuylkill.
**District 12** - Philadelphia

### Section 2.  Transfer of Schools From One PIAA District to Another.

Upon (1) the request of the School Board or the Board having jurisdiction over the school, and (2) and approval by a three-fourths majority vote of the Board of Directors, a school may be transferred from the jurisdiction of one PIAA District to that of an adjacent PIAA District.  The procedure for requesting such transfer is as follows:

1.   The request of the school shall first be submitted to the District Committee of the District having jurisdiction over the school.

2.   Following issuance of a recommendation by the District Committee having jurisdiction over the school, the request shall be submitted to the District Committee of the District to which the school desires to transfer.

3.   Following issuance of a recommendation by the District Committee of the District to which the school desires to transfer, the request shall be submitted to the Board of Directors.

History of that student and, if any Supplemental Health History questions are either checked yes or circled, shall require that student to submit a completed Section 8, Re-Certification by Licensed Physician of Medicine or Osteopathic Medicine, to the Principal, or Principal's designee of that student's school prior to that student's additional participation in interscholastic athletics.

**Section 4.   Timing.**

The CIPPE may not be authorized earlier than June 1st and is effective, regardless of when performed during a school year, until the next May 31st.

| INTERPRETATION |
| --- |
| December 29, 1959, as amended May 26 and July 22, 1982; July 22, 1983; July 19, 1996; April 6 and October 5, 2002; July 27, 2006; and July 25, 2008. |
| The minimum wrestling weight at which a student may wrestle must be certified to by an Authorized Medical Examiner no earlier than six weeks prior to the first Regular Season Contest day in that sport. |
| The minimum wrestling weight is to be recorded on the CIPPE Minimum Wrestling Weight form, which is placed on file with the student's Principal, or the Principal's designee. |

## ARTICLE VI
## TRANSFERS, RESIDENCE, AND RECRUITING
### Preamble

The purpose of this ARTICLE is to deter Transfers and/or recruiting which are materially motivated in some way by an athletic purpose.

PIAA and its member schools believe that interscholastic athletics has a valuable role in the overall development of students and is a useful character building tool. PIAA and its member schools believe further that, despite increasing societal pressures to elevate the role of competitive athletics in society and in the educational process, athletics should remain subservient to academics. Students who make decisions as to what school to attend based upon factors relating to athletics defeat this objective. Further, such decisions are detrimental to efforts to maintain competitive integrity and equity, to prevent athletic recruiting, and to instill school loyalty.

PIAA recognizes the difficulty in preventing Transfers which are materially motivated in some way by an athletic purpose. Experience has shown that students can often disguise athletically motivated Transfers and, in almost every situation, show at least some legitimate purposes for such Transfers. PIAA further recognizes that Regional Panels and District Committees, without subpoena powers or investigatory staffs, may not be able to consistently and effectively police athletically motivated Transfers. Further, efforts to measure how much of a factor athletics must play in a decision before it is considered improper is, while possible, also extremely difficult.

In light of the above stated important educational and organizational objectives, and the challenges presented in attempting to prevent athletically motivated Transfers, PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for athletic purposes. The Board of Directors recognizes that this approach may, on occasion, result in a presumption of ineligibility for students who may not have actually considered athletics as a factor in transferring, and may conversely not catch all students who actually considered athletics as a factor.   Consequently, the following ARTICLE includes a provision which provides the Regional Panels and District Committees, within their respective jurisdictions, with the power, under appropriate circumstances, to change eligibility status to meet the objectives of this ARTICLE.

**Section 1.   General Provisions.**

**A.   General Definition.**  A Transfer occurs in any situation in which a student seeks eligibility to participate in interscholastic athletics at a school other than the one at which the student was either enrolled or otherwise eligible.

**B.   Summer Conduct by Student.**   Following the completion of a school year, a student may enroll at another school but not be deemed to have Transferred unless (1) the student Practices with a Team from another school; (2) the student attends at least one fall semester class at another school; and/or (3) the student, through the student's school has requested a determination of eligibility at another school and the applicable District Committee or Regional Panel has ruled on such request.   Once a student Practices with another school's Team or attends a fall semester class at another school, the student will be considered to have Transferred to that school.   A District Committee's or Regional Panel's determination of eligibility cannot be avoided by re-enrollment back at the prior school, which would be viewed as a new Transfer.

**Section 2.   Eligibility of Transfers.**

**PREAMBLE:**  Beginning at the District level, PIAA sponsors championship tournaments for its member schools in a number of sports.  PIAA has a significant interest in promoting fair and equitable competition for these championship tournaments and has determined that transfers can, and often do, dramatically shift the competitive balance.  Such transfers, particularly when those occur prior to the junior or senior years, have substantially undermined the confidence of the membership and public generally in the integrity and fairness of the entire post-season system.  For that reason, the Board of Directors has determined that, with few exceptions, any students who transfer after playing a sport in their 10th grade year shall not be eligible to participate in the ensuing PIAA tournament in that sport.  The student, if otherwise eligible, may participate in that sport only during the regular season.

A.  In-Season Transfers.

1.  Because of the timing difficulties in expeditiously obtaining necessary paperwork, of confirming representations of eligibility, of determining whether such Transfers are opposed by any appropriate party, of promptly scheduling hearings to consider such matters, and to reduce the likelihood of participation by an ineligible student that would impact on competition and the opportunity to participate by other students, a student who Transfers after the student Practices with a school's Team shall be ineligible to participate in that sport in Contests for a period of 21 calendar days following enrollment at the student's new school.  The student's eligibility shall thereafter be determined by Sections 3 or 4 of this ARTICLE, as applicable.

2.  If a student in 10th, 11th, or 12th grade transfers before the student was eligible to participate in at least 50% of the PIAA maximum number of Regular Season Contests in that sport, the student is ineligible for participation in the postseason (District championships tournament and thereafter) in that same sport, for the current school year.

3.  If a student transfers after the student was eligible to participate in at least 50% of the PIAA maximum number of Regular Season Contests in that sport, the student will be deemed to have participated in an entire season and, following the transfer, will not be eligible for further participation in that sport for the current school year.  If said student is in the 10th or 11th grade then said student is ineligible for participation in the postseason in the (District championships tournament and thereafter) in that same sport of the subsequent school year.

**B. Out-of-Season Transfers**

1.  If a student transfers after participating in a sport in their 10th grade year, or thereafter, and following completion of such season, transfers to another school, said student is ineligible for participation in the postseason (District championships tournament and thereafter) in that same sport for the subsequent

school year. The student, if otherwise eligible, may participate in that sport only during the regular season.

### C.   Waiver Provision of A and/or B. – District Committee may grant eligibility if certain situations are met.

A District Committee may waive this period of ineligibility upon demonstration by the student that the transfer was necessitated by exceptional and unusual circumstances beyond the reasonable control of the student's family.  For purposes of this provision, the following reasons WILL be deemed sufficient to meet this standard:

- A change of residence necessitated by a change in employment;

- A school-initiated administrative transfer within a school district;

- A court ordered transfer;

- A change of schools caused by a military reassignment of a parent;

- A change of schools caused by release from a juvenile facility; and

- A demonstrable change in income or other financial resources that compels withdrawal from a school.

For purposes of this provision, the following reasons will NOT be deemed to meet this standard:

- A transfer for academic, developmental, spiritual and/or social reasons; and

- A change of residence resulting from a family separation, unless court approved.

All other tendered reasons will be considered by the District Committee on a case-by-case basis.

### Section 3.  Presumptive Eligibility.

Subject to Sections 5C and 6, of this ARTICLE, a transferring student is presumed to be eligible if the student meets one of the following provisions:

### A.   Natural Break Transfer.

Promotion from a junior high/middle school to a senior high school is considered a Transfer between schools. A student, who has made a Natural Break Transfer and who has not previously participated on a different senior high school Team in any sport, is presumptively eligible immediately for interscholastic athletics.

### B.   Administrative Transfer.

For administrative, non-disciplinary purposes, the student has been transferred by executive action initiated by school administrative personnel to a PIAA member school within the same public school district or, if previously enrolled at a Catholic school, within the same Archdiocese or Diocese, or if enrolled in a private school within the same corporate organization. An expulsion does not constitute an administrative Transfer under this subsection.

### C.   Change of Residence of Parent(s).

The student (1) has moved with and resides with the student's natural or, if legally adopted, the student's adoptive parents, or with either parent and (2) has transferred to a PIAA member school in the public school district in which the student now resides, or to a Private School.

Upon the separation of the student's natural or adoptive parents, the student has accompanied the parent departing from the family residence and resides with the departing parent in the public school district in which that parent establishes residence; and the student has transferred to a PIAA member school in the public school district in which the student now resides, or to a Private School.

A student whose natural or adoptive parents are separated, and who has more than one Transfer between residences of separated parents shall have the student's eligibility determined under Section 5 herein.

### D.   Change of Residence of Legal Guardian(s).

The student (1) has moved with and resides with legal guardian(s), appointed by order of a Court of Common Pleas; (2) has transferred to a PIAA member school in the public school district in which the student now resides, or to a Private School; and (3) the student's eligibility is approved by the Regional Panel or District Committee, within their respective jurisdictions.  If the appointment of a legal guardian is pending, the student will be eligible when such eligibility is approved by the Regional Panel or District Committee.

### E.   Change of Residence of Foster Parent(s).

The student (1) has moved with and resides with foster parents, with the approval of the local child welfare organization; and (2) has transferred to a PIAA member school in the public school district in which the student now resides, or to a Private School.

### F.   School Closing.

The school where the student has attended is abolished.

### G.   Boarding School Student.

The student has enrolled at, and resides in housing provided by and on the campus owned by, a Private School.  **NOTE:** This relates only to Transfers.  Students who are placed by court order or as a result of disability must still meet the applicable requirements of ARTICLE III, ATTENDANCE, Section 1, Where Enrolled for Attendance, and Section 8B, Students Placed by Court Order or as a Result of Disability, of the PIAA By-Laws.

### H.   Transfer From Court Assigned School.

Upon transferring from a school at which a student was placed pursuant to a court order, said student is presumptively eligible at (1) a public school in the district of residence of the student where the student would have otherwise attended but for the judicial assignment and, if different, (2) the school at which the student attended prior to placement pursuant to court order.  If the student transfers to any other school, the student is presumptively ineligible in all sports played within one year prior to transfer.  Notwithstanding the provisions of Section 3 of this ARTICLE, said period of ineligibility will be lifted only if the student demonstrates by clear and convincing evidence that the decision to enroll at such school was not motivated by a desire to play for or with a particular student, school, Coach or Team.

### Section 4.   Ineligible Students.

A student not presumptively eligible under Section 3 of this ARTICLE is presumptively ineligible to participate in each sport in which the student participated within one year immediately preceding the date of the student's Transfer.  Except as otherwise provided in this ARTICLE, the student is presumptively eligible in all other sports.

### Section 5.   Review of Eligibility.

### A.   Certification of Principals.

Notwithstanding Section 4 of this ARTICLE, a Regional Panel or District Committee, within their respective jurisdictions, may grant eligibility where the Principal of the PIAA member school at which the student enrolls submits to the Regional Panel or District Committee a completed and properly executed PIAA Athletic Transfer Waiver Request Form, which includes:

1.   A certification from the Principal of the PIAA member school to which the student transferred that (a) that school's Principal has interviewed the transferring student and the Director of Athletics for that Principal's school; (b) none of the twelve illustrations set forth in Section 5E or the thirteen illustrations set forth in Section 9B of this ARTICLE are applicable; (c) the information from the PIAA member school to which the student transferred, as set forth on the PIAA Athletic Transfer Waiver Request form, is true and correct; and (d) upon completion of the investigation, the PIAA member school's Principal believes that the Transfer

was not materially motivated in some way by an athletic purpose.

2. A certification from the Principal of the school from which the student transferred that (a) that school's Principal has interviewed the Director of Athletics for that Principal's school and, if possible, the transferring student; (b) none of the twelve illustrations set forth in Section 5E or the thirteen illustrations set forth in Section 9B of this ARTICLE are applicable; (c) the information from the school from which the student transferred, as set forth on the PIAA Athletic Transfer Waiver Request form, is true and correct; and (d) upon completion of the investigation, the school's Principal believes that the Transfer was not materially motivated in some way by an athletic purpose.

**B. Waiver of Ineligibility.**

A student who is not otherwise presumptively eligible under Section 3 of this ARTICLE may, through the Principal of the school at which the student seeks eligibility, request that the District Committee, waive the period of ineligibility in some or all sports. Said waiver shall not be granted unless the student demonstrates by clear and convincing evidence that the transfer was not materially motivated in some way by an athletic purpose relating to the sports for which eligibility is sought and that granting eligibility would not otherwise circumvent the purpose of this ARTICLE of deterring Transfers which are materially motivated in some way by an athletic purpose. If granted, eligibility is effective as of the date of Transfer.

**C. Review and Rescission of Presumptive Eligibility.**
Notwithstanding Section 3 of this ARTICLE, a Regional Panel or District Committee, within their respective jurisdictions, may, following a student's Transfer and upon request of the Principal of a PIAA member school, or on its own initiative, after giving notice to the student's school and an opportunity to be heard to the student and the student's school, (1) declare any transferring student ineligible to participate in each sport in which that student participated within a period of one year immediately preceding the date of Transfer, if the Committee finds that there exists a reasonable likelihood that the Transfer was materially motivated in some way by an athletic purpose or would otherwise circumvent the purpose of the ARTICLE of deterring Transfers which are materially motivated in some way by an athletic purpose; and/or (2) if a finding is specifically made that there exists a reasonable likelihood that the Transfer was materially motivated in some way by an athletic purpose relating to specific sports, declare that the student is ineligible to participate in those sports for one year from the date of Transfer, regardless of whether the student actually participated in those sports for the year preceding the date of Transfer.

**D. Subsequent Transfer.** A student who Transfers again during the one-year period of ineligibility remains ineligible, in the applicable sports, until the conclusion of that year.

**E.** Transfers which are motivated in some material way by an athletic purpose are those Transfers which would not have occurred but for a desire of the student or the student's family (1) to gain additional playing time; (2) to play for a particular school, Coach, or Team; (3) to avoid either playing for, or athletic sanctions imposed by, a particular school, Coach, or Team; and/or (4) to gain increased media or college exposure.

The following is an illustrative, but not exhaustive, list of situations which may indicate athletic purpose:

1. The student, or a parent or guardian, or an adult with whom the student resides, is dissatisfied with the student's position or the amount of playing time which the student receives.

2. The student, or a parent or guardian, or an adult with whom the student resides, has a problem with a Coach

or school athletic administration at either a personal or professional level.

3. The student, or a parent or guardian, or an adult with whom the student resides, seeks relief from conflict with the philosophy or action of an administrator or teacher relating to sports.

4. The student, or a parent or guardian, or an adult with whom the student resides, seeks to avoid or nullify the effect of actions or anticipated actions by the previous school relating to sports eligibility.

5. Except as provided for under Section 7 of this ARTICLE, there is no Team in the particular sport at the school from which the student has transferred.

6. The student follows the student's Coach or other student-athletes to another school to which the Coach or athletes have transferred or seeks to play for a particular Coach or with a particular athlete due to a prior relationship with the Coach or athlete (such as through club or AAU participation) or because of the reputation of the Coach.

7. The student, or a parent or guardian, or an adult with whom the student resides, desires that the student play on a less successful, smaller enrollment classification and/or lower profile Team in order to be ranked higher among the students on that Team.

8. The student, or a parent or guardian, or an adult with whom the student resides, desires that the student play on a more successful, larger enrollment classification and/or higher profile Team to gain a higher level of competition and/or more exposure to college scouts.

9. The student moves with one parent, one guardian, or one or more siblings, into a residence in the new public school district, especially where the student and/or the parent, guardian, or sibling returns to the family home in the evening and/or on weekends.

10. The student, or a parent or guardian, or an adult with whom the student resides, seeks out Athletic Personnel and/or student-athletes at the transferee school.

11. The student Transfers in the middle of a marking period and/or immediately before or after a sports season.

12. The student transfers immediately after being cut from a Team in a particular sport.

**NOTE:** A student who Transfers because of alleged bullying, harassment or other misconduct by (1) Coaches and/or other members of a sports Team and/or (2) if related to the student's participation in interscholastic athletics, by other students, is nevertheless considered to have transferred in some material way for an athletic purpose unless the student demonstrates that (1) the alleged misconduct is corroborated by evidence and/or testimony from persons unrelated to the student and/or the student's family; (2) the student timely sought assistance of appropriate school personnel to address such misconduct; and (3) the District Committee finds that such misconduct produced severe and unusual conditions which would have prevented a reasonable student under similar circumstances from receiving an appropriate education at the school. All three (3) factors must be present for the District Committee to grant eligibility under this Section.

**Section 6. Transfers Following Expulsion or Anticipated Expulsion.**

Not withstanding the provisions of Section 3 of the article, a student who is expelled from a school, or who withdraws pending likely expulsion, for conduct which, had the student been allowed to remain at the sending school, would likely have resulted in loss of the opportunity to participate in interscholastic athletics at that school is ineligible to participate in interscholastic athletics at the receiving school for a period of one year from the date of transfer or, if the student demonstrates by compelling evidence

**INTER-DISTRICT CHAMPIONSHIP CONTEST:** A Contest conducted under the jurisdiction of the PIAA Office, which is necessary to determine an individual or Team champion in a sport.

**INTER-SCHOOL PRACTICE:** All of the following elements must be present for a school to consider an Athletic Event with other schools as an Inter-School Practice:

1. The involved schools must agree, in advance of the Athletic Event, that the Athletic Event will be an Inter-School Practice rather than a Scrimmage or Contest.

2. No admission fee is charged.

3. The Teams participate only in conditioning exercises and/or limited and closely controlled drills.

4. The Teams are dressed in Practice uniforms only.

5. No score may be displayed or recorded.

6. The results of the Inter-School Practice shall not be counted as a part of the involved Teams' season win and loss records.

Any Athletic Event involving two or more schools must be considered a Scrimmage or Contest unless it meets all of the criteria listed above.

**JUNIOR VARSITY:** A non-Varsity level of interscholastic competition in a sport sponsored by a senior high school. This level is to be distinguished from Varsity and junior high/middle school competition.

**MAGNET SCHOOL:** A school designed to provide an academic focus on a particular theme (e.g. science/math, liberal arts, performing arts, gifted/talented, or foreign language).

**MIXED GENDER TEAM:** A Team consisting of both boys and girls. Participation of both boys and girls on a Team in any Contest during a season causes the Team to be considered as a Mixed Gender Team for that season.

**MULTIPLE SCHOOL (DUAL) EVENT:** Contests involving three (3) or more Teams of students representing their schools in interscholastic Team wrestling competition.

**NATURAL BREAK TRANSFER:** A Transfer occurring when the student:

1. has completed the highest grade of a public junior high/middle school and is thereupon promoted by the public school district to a public senior high school in the same public school district;

2. has completed the highest grade of a public or Private junior high/middle School and has enrolled in a Private senior high School;

3. has enrolled in the lowest grade of a public senior high school, after having completed the previous grade at a Private junior high/middle School; and/or

4. has enrolled in the lowest grade of a Private senior high School, after having completed the previous grade at a public junior high/middle school.

**OPEN GYM:** An event/activity whereby a PIAA-member school makes available the use of its gymnasium(s) and/or other athletic facilities to all students enrolled in their school district.

**PERSONAL PRIVATE INFORMATION:** Information about an individual, or an individual's family, not generally known to the community, including but not limited to information relating to a person's academic, health, disciplinary and delinquency history, financial condition, domestic circumstance, family and personal relationships, substance abuse, and/or potentially illegal conduct.

**PIAA:** The Pennsylvania Interscholastic Athletic Association, Inc.

**PIAA OFFICE:** The PIAA headquarters, currently located at 550 Gettysburg Road, P.O. Box 2008, Mechanicsburg, PA, 17055-0708.

**POSTSEASON:** The period of time between the last Regular Season Contest and the PIAA Championships deadline of a sport, inclusive of District and Inter-District Championship Contests.

**PRACTICE:** An Athletic Event involving one PIAA member school at which no other school is present.

**PRESEASON:** The period of time between the first Practice day and the first Regular Season Contest day of a sport, inclusive of the first Scrimmage or Inter-School Practice day in that sport.

**PRINCIPAL:** The individual responsible to PIAA, pursuant to ARTICLE X, LOCAL MANAGEMENT AND CONTROL, Section 1, Responsibility of Principal, of the PIAA Constitution, for all matters pertaining to the interscholastic athletic relations of the Principal's school. In a public school, the Principal is the person holding a certificate issued by the Department of Education as a Principal and who is appointed by the School Board in accordance with Public School Code as Principal of the school. In a Private School, the Principal is the person designated or appointed by the Board having jurisdiction over the school to have comprehensive responsibility for the day-to-day operations of the Private School.

**PRIVATE SCHOOL:** A nonpublic school.

**PRIVATE SCHOOL'S SCHOOL DISTRICT:** Each Private School, including each Private senior high School's Feeder Schools, shall have its own "school district." Regardless of the location of its Feeder Schools, the geographic boundaries of the Private senior high School's "school district" are considered the boundaries of the public school district in which it is geographically located. The Private School's school district and the public school district are separate school districts.

**PUBLIC SCHOOL DISTRICT:** Those students that are enrolled in the junior high and senior high schools of a public school district.

**RECEIVING SCHOOL:** A school which receives Transfer students from any other school.

**RECREATION PROGRAM:** Community based activity program open to all residents of a school district.

**REGULAR SEASON:** The period of time between the first Regular Season Contest day and the last Regular Season Contest day of a sport, exclusive of District and Inter-District Championship Contests.

**REGIONAL PANEL:** A panel composed of three-members from each of the contiguous Districts, pursuant to ARTICLE VIII of the PIAA Constitution.

**SCHOOL BOARD:** The Board of Directors for a public school district.

**SCRIMMAGE:** All of the following elements must be present for a school to consider an Athletic Event with other schools as a Scrimmage:

1. The involved schools must agree, in advance of the Athletic Event, that the Athletic Event will be a Scrimmage rather than an Inter-School Practice or Contest.

2. No admission fee is charged.

3. The head Coaches of the involved Teams may stop the activity at any time to provide instruction or to make substitutions.

4. There are no restrictions concerning the number of times a player/contestant enters or leaves the Scrimmage.

5. No score may be displayed or recorded.

5

**PENNSYLVANIA INTERSCHOLASTIC**
**ATHLETIC ASSOCIATION, INC.**

550 Gettysburg Road - P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708
(800) 382-1392 - (717) 697-0374
FAX (717) 697-7721
WEB SITE - www.piaa.org

## MEMORANDUM

To:           Principal and Athletic Director – Dunmore High School

From:       Patrick B. Gebhart, Assistant Executive Director

Subject:    Girls' Basketball Classification Determination – Competition Formula

Date:        April 28, 2020

The purpose of this memorandum is to provide you with information regarding your school's classification in the sport of girls' basketball for the 2020-21 and 2021-22 school years. It is to this matter that we will direct our comments.

As you are aware, the PIAA Board of Directors passed a competition formula in the sports of football and basketball to address competition between schools. The formula is based upon your school's classification with additional consideration given to the number of success points achieved in your sport classification the previous two years and the number of transfers identified by your PIAA eligibility list. Last year a full tournament of five games was completed with a championship game being held. This year, all identified teams completed the same amount of contests and the tournament was suspended and terminated due to the COVID-19 pandemic.

The success points are based upon entry into the PIAA post-season tournament and are issued as follows:

Entry round      = 1 point
Quarterfinal      = 2 points
Semifinal         = 3 points
Championship = 4 points

The number of transfers received for schools to move up in classification in basketball is one (1).

Your classification for the upcoming two–year cycle in the sport of girls' basketball is 4A.
This is based upon the following numbers:

Dunmore High School Enrollment #'s: 163
Success points in previous cycle classification: 6
# of Transfers identified by PIAA eligibility lists: 2
Competition classification for 2020-2021 & 2021–2022 is 4A.

Memorandum for Classification Formula in Basketball
April 28, 2020
Page 2

Please take a moment to verify the number of transfers listed upon your certificate of eligibility which is hosted on the PIAA eligibility portal. We have provided you with copies of the last three years of eligibility lists to assist in locating changes to the number of students that are not present from year 2017-18 and 2018-19. Please note in some student listings you indicate certain identified students are transfers by listing "Yes" by their name on the certificate of eligibility.

If you have questions or concerns, with this information, you may contact me, or the Executive Staff, at your earliest convenience. The process for appeal of these numbers is stated below.

**Appeals:**

A school may appeal its upgrade in competition classification by providing written documentation to the Executive Staff to illustrate the school received less than one (1) transfer. In making an appeal on the number of transfers, please include all relevant documents for each student identified in the attached PIAA eligibility lists that the school believes should not be listed as a transfer.

The appeal will be held upon the paperwork of all school related documents (documents may include, but not be limited to, certificates of eligibility; transcripts; attendance records; CIPPE forms; previous two year cycle team schedules, statistics and results). Documentation must be provided to the Executive Staff and submitted and verified by the school principal. If the Executive Staff makes a positive determination to accept the appeal, the appeal will end. If the Executive Staff rejects this appeal, the decision may be appealed to the Board of Directors.

The deadline for an appeal to the Executive Staff is 12 PM, Friday, May 8, 2020. The deadline for appeal to the PIAA Board of Directors' is 12 PM, Friday, May 15, 2020. The Board of Directors will meet on Wednesday, May 20, 2020 to confirm all basketball classifications.

Thank you.

**Dunmore**

| Schools (Dist) | 2019 | | | | Highest Pt | 2020 | | | | Highest Pt | 2019 & 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1st Rd | Qtrs | Semis | Champs | Total | 1st Rd | Qtrs | Semis | Champs | Total | Total |
| Dunmore | 1 | 2 | 3 | 4 | 4 | 1 | 2 | | | 2 | 6 |

**Changes in the Certificates of Eligibility for the 2018-19 & 2019-20 Classification Cycle**

Changes in Certificate of Eligibility from 2017-18 to 2018-19

| Olivia | Lynwood | 11 | 2/9/2002 | Female | 7/1/2018 | Dunmore | Yes | 5 | 1 |
|---|---|---|---|---|---|---|---|---|---|

Changes in Certificate of Eligibility from 2018-19 to 2019-20

| Emma | Conte | 10 | 10/5/2003 | Female | 7/1/2019 | Dunmore | Yes | 3 | 1 |
|---|---|---|---|---|---|---|---|---|---|

| First Name | Last Name | Gr | DOB | Gender | Enrollment Date | District of Residence | Transfer? | Semesters | Seasons |
|---|---|---|---|---|---|---|---|---|---|
| **Dunmore 2017-18** | | | | | | | | | |
| Chloe | Arnoni | 9 | 11/30/2002 | Female | 7/1/2017 | Dunmore | No | 1 | 3 |
| Maria | Borgia | 12 | 9/26/1999 | Female | 7/1/2017 | Dunmore | No | 7 | 6 |
| Alexis | Chapman | 9 | 4/18/2003 | Female | 7/1/2017 | Dunmore | No | 1 | 3 |
| Elisa | Delfino | 9 | 10/9/2002 | Female | 7/1/2017 | Dunmore | No | 1 | 3 |
| Gianna | Delfino | 11 | 7/10/2000 | Female | 7/1/2017 | Dunmore | No | 5 | 5 |
| Brooke | Frable | 11 | 7/29/2001 | Female | 7/1/2017 | Dunmore | No | 5 | 5 |
| Nora | Haggerty | 10 | 2/8/2002 | Female | 7/1/2017 | Dunmore | No | 3 | 4 |
| Katherine | Hopkins | 10 | 11/29/2001 | Female | 7/1/2017 | Dunmore | No | 3 | 4 |
| Samantha | Lewis | 9 | 9/4/2002 | Female | 7/1/2017 | Dunmore | No | 1 | 3 |
| Kelly | Quinn | 12 | 10/1/1999 | Female | 7/1/2017 | Dunmore | No | 7 | 6 |
| Lisa | Tallo | 11 | 8/15/2001 | Female | 7/1/2017 | Dunmore | No | 5 | 4 |
| Anna | Talutto | 9 | 11/5/2002 | Female | 7/1/2017 | Dunmore | No | 1 | 3 |
| Victoria | Toomey | 11 | 6/19/2001 | Female | 7/1/2017 | Dunmore | No | 5 | 5 |
| Julia | Walsh | 11 | 10/30/2000 | Female | 7/1/2017 | Dunmore | No | 5 | 5 |
| **Dunmore 2018-19** | | | | | | | | | |
| Kaidyn | Biko | 9 | 10/22/2003 | Female | 7/1/2018 | Dunmore | No | 1 | 1 |
| Mia | Blume | 9 | 9/21/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Katie | Capooci | 9 | 8/5/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Alexis | Chapman | 10 | 4/18/2003 | Female | 7/1/2018 | Dunmore | | 3 | 4 |
| Bridgette | Conway | 9 | 4/12/2003 | Female | 7/1/2018 | Dunmore | | 2 | 2 |
| Elisa | Delfino | 10 | 10/9/2002 | Female | 7/1/2018 | Dunmore | | 3 | 4 |
| Gianna | Delfino | 12 | 7/10/2000 | Female | 7/1/2018 | Dunmore | | 7 | 6 |
| Brooke | Frable | 12 | 7/29/2001 | Female | 7/1/2018 | Dunmore | | 7 | 6 |
| Nora | Haggerty | 11 | 2/8/2002 | Female | 7/1/2018 | Dunmore | | 5 | 5 |
| Katherine | Hopkins | 11 | 11/29/2001 | Female | 7/1/2018 | Dunmore | | 5 | 5 |
| Elianna | King | 9 | 4/16/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Jahniah | Laborde | 9 | 11/24/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Maddie | Lessard | 9 | 5/23/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Samantha | Lewis | 10 | 9/4/2002 | Female | 7/1/2018 | Dunmore | | 3 | 4 |
| Olivia | Lynwood | 11 | 2/9/2002 | Female | 7/1/2018 | Dunmore | Yes | 5 | 1 |
| Sophia | Mandarano | 9 | 10/31/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Jaclyn | Marichak | 9 | 6/16/2004 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Moriah | Murray | 9 | 8/31/2003 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Alexis | Santarsiero | 9 | 3/31/2004 | Female | 7/1/2018 | Dunmore | | 2 | 3 |
| Lisa | Tallo | 12 | 8/15/2001 | Female | 7/1/2018 | Dunmore | | 7 | 5 |
| Anna | Talutto | 10 | 11/5/2002 | Female | 7/1/2018 | Dunmore | | 3 | 4 |
| Victoria | Toomey | 12 | 6/19/2001 | Female | 7/1/2018 | Dunmore | | 7 | 6 |
| Julia | Walsh | 12 | 10/30/2000 | Female | 7/1/2018 | Dunmore | | 7 | 6 |
| Molly | Zimmer | 9 | 6/8/2004 | Female | 7/1/2018 | Dunmore | | 2 | 3 |

**Dunmore 2019-20**

2019 - 2020

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Anna | Acculto | 9 | 6/30/2005 | Female | 7/1/2019 | Dunmore | | 2 | 3 |
| Kaidyn | Biko | 10 | 10/22/2003 | Female | 7/1/2019 | Dunmore | | 3 | 2 |
| Mia | Blume | 10 | 9/21/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Katie | Capooci | 10 | 8/5/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Alexis | Chapman | 11 | 4/18/2003 | Female | 7/1/2019 | Dunmore | | 5 | 5 |
| Emma | Conte | 10 | 10/5/2003 | Female | 7/1/2019 | Dunmore | Yes | 3 | 1 |
| Elisa | Delfino | 11 | 10/9/2002 | Female | 7/1/2019 | Dunmore | | 5 | 5 |
| Nora | Haggerty | 12 | 2/8/2002 | Female | 7/1/2019 | Dunmore | | 7 | 6 |
| Katherine | Hopkins | 12 | 11/29/2001 | Female | 7/1/2019 | Dunmore | | 7 | 6 |
| Elianna | King | 10 | 4/16/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Jahniah | Laborde | 10 | 11/24/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Cadence | Lewis | 9 | 12/10/2004 | Female | 7/1/2019 | Dunmore | | 2 | 3 |
| Sophia | Mandarano | 10 | 10/31/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Moriah | Murray | 10 | 8/31/2003 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Adrianna | Pacewicz | 9 | 11/22/2004 | Female | 7/1/2019 | Dunmore | | 2 | 3 |
| Alexis | Santarsiero | 10 | 3/31/2004 | Female | 7/1/2019 | Dunmore | | 4 | 4 |
| Anna | Talutto | 11 | 11/5/2002 | Female | 7/1/2019 | Dunmore | | 5 | 5 |
| Ciera | Toomey | 9 | 10/3/2004 | Female | 7/1/2019 | Dunmore | | 2 | 3 |
| Molly | Zimmer | 10 | 6/8/2004 | Female | 7/1/2019 | Dunmore | | 4 | 4 |

6

9

Made in USA





## DUNMORE JR/SR HIGH SCHOOL

BUCKS

Mr. Timothy Hopkins
Principal

BUCKS

Mrs. Margaret Hart
Assistant Principal

May 4, 2020

Patrick B. Gebhart, Assistant Executive Director
Pennsylvania Interscholastic Athletic Association, Inc.
550 Gettysburg Road
P.O. Box 2008
Mechanicsburg, PA 17055-0708

    Re:    Dunmore School District Girls Basketball Classification

Dear Mr. Gebhart:

    In a memo directed from you dated April 28, 2020, Dunmore High School was notified that our varsity girls' basketball program will be reclassified from Class 3A to Class 4A under its Competition Classification Formula because of an accumulation of "success" points and two transfers during the 2018-2019 and 2019-2020 athletic seasons. Please accept this letter as an appeal from that decision.

### Issue 1
#### Was the spirit of the rule intended for our circumstances?

    In recent years, it has been well noted that the PIAA has taken many steps to deter an ongoing problem of student-athletes transferring for athletic reasons. In fact, Article VI - Transfers, Residence, and Recruiting of the PIAA Constitution and Bylaws, the first sentence reads, "The purpose of this ARTICLE is to deter Transfers and/or recruiting which are materially motivated in some way by an athletic purpose." Later in Article VI, it reads, "PIAA has a significant interest (sic) in promoting fair and equitable competition for these championship tournaments and has determined that transfers can, and often do, dramatically shift the competitive balance." Stemming from this process, the PIAA has also created its Competition Classification Formula "to address competitive balance and the development of a formula to address this process of classifying schools." In this case, we do not believe that either student affected the competitive balance of our classification whatsoever.

    Neither of the transfer students involved were members of the varsity girls' basketball team during the 2018-2019/2019-2020 seasons. Neither of the transfer students participated in a single varsity game or practice during the 2018-2019/2019-2020 seasons. Both transfer students played in a limited role on the junior-varsity team, and both transfer students practiced completely separate from our varsity team. As is written in Article VI, the transfer rule was

intended to deal with transfers who were giving their school a competitive advantage over their competition. That is not what occurred here.

We believe there should be a distinction made between junior varsity and varsity transfers especially in cases where the teams do not practice together. The PIAA makes a clear distinction between junior varsity and varsity in its by-laws. The PIAA formally defines junior varsity as: "A non-varsity level of interscholastic competition in a sport sponsored by a senior high school. This level is to be distinguished from varsity and junior high/middle school competition." By definition the PIAA acknowledges that this is a separate division from varsity basketball. However, the way it currently collects eligibility forms fails to take that distinction into consideration. Given the circumstances stated above, we do not believe that our transfer students had any impact whatsoever on the competitive balance of our natural classification.

## Issue 2
## Should either of the students in question be considered athletic transfers?

In the document the PIAA provides to its member schools that is also offered to the general public on its website, it is said the Competition Classification Formula will utilize the following formula to determine a team's classification:

Enrollment Classification + Success Factor + Athletic Transfers = Competition Classification

We do not believe that either player should fall under the category of "athletic transfer" because neither player came to our school for athletic reasons. In Article VI - Transfers, Residence, and Recruiting of the PIAA Constitution and Bylaws it states: "PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for athletic purposes." Athletic transfers by definition involve intent. Neither of the students listed enrolled at Dunmore High School for any reason except for a residential change.

The first student, Olivia Lynwood was a dual resident of both Dunmore and Scranton based upon the fact that her parents had been separated for over five (5) years. Her father resided in Scranton and her mother resided in Dunmore. The natural parents had joint custody and as a result, Olivia had the eligibility to reside in either district. Prior to August 27, 2018, Olivia resided with her father in the Scranton School District and attended Scranton High School, where she participated on the junior varsity basketball team during her 10th grade year in 2017-2018. Her parents decided that it would be in her best interest to live with her mother in Dunmore following the 2017-2018 school year as that was a more suitable location given the nature and circumstances of the parties.

Olivia enrolled in the Dunmore School District on August 27, 2018. Initially it was not her intention to participate in the basketball program at all and she did not apply for transfer eligibility until December 3, 2018. A copy of her school athletic transfer waiver is enclosed and marked as Exhibit "A". On December 16, 2018, the PIAA District allowed her to participate in basketball after sitting out a period from December 3, 2018 to December 24, 2018. A copy of that ruling is attached hereto and marked as Exhibit "B". Olivia only played in a few junior varsity games at Dunmore in her junior year and then decided she was no longer interested in

participating in basketball for the 2019-2020 school year.   She never participated in a single varsity game or practice.   For the reasons stated above, we do not believe that Olivia should fall under the category of athletic transfer for the purposes of calculating the Competition Classification Formula.

The other alleged athletic transfer, Emma Conte, lived with her parents in Moosic, Pennsylvania before relocating to Dunmore with her parents when they purchased a new home. The transfer to Dunmore School District was solely based on the relocation of her family and had no relationship to sports whatsoever. A request for an athletic transfer waiver was made and accepted on August 28, 2019 (See Exhibit "C").  On or about September 18, 2019, PIAA District 2 approved the transfer of Emma Conte to Dunmore School District with eligibility immediately (See Exhibit "D").

Not only did Emma not transfer for athletic purposes, she did not even play basketball at her previous high school (See Exhibit "E").  When her family moved to Dunmore, she decided to try out for the Dunmore Girls' Basketball Team in an effort to meet new people.  She did not make the varsity team and participated sparingly on the junior varsity team during this past season (2019-2020), and has decided not to participate any further in the program.  She never participated in a single varsity game or practice.  For the reasons stated above, we do not believe that Emma should fall under the category of athletic transfer for the purposes of calculating the Competition Classification Formula.

In addition, after further review of Competition Classification Formula regulations through October of 2019, a school district would need two (2) athletic transfers in basketball to trigger an increase in classification.  Both of these transfers occurred prior to any amendment made at a meeting on October 2, 2019 by the PIAA.  The change was made in October of 2019 and was effective immediately and would not apply to transfers that had occurred prior to that date.  Therefore, the old rule of two (2) athletic transfers should apply in this case.

Issue 3

**A by-product of Issue 2, what will the impact be on the non-athletic transfer moving forward if the Competition Classification Formula is calculated in this way?**

Article VI of the PIAA By-laws states, "PIAA and its member schools believe that interscholastic athletics has a valuable role in the overall development of students and is a useful character-building tool." Like the PIAA, we believe strongly that students can learn a great deal by participating in sports, and we encourage our students to do so.  In fact, the Dunmore girls' basketball team accepts all students who are interested in playing girls basketball.  No student-athlete who tries out for our team is cut.  All interested students are welcome.  But moving forward, how are we supposed to handle non-athletic transfer students who decide they would like to join our team for the purposes of socialization at a new school?

We, as a district, are greatly concerned that this rule implies that a program with any expectation of success would potentially need to restrict non-athletic transfers from joining in order to remain in our natural classification. We feel that this implication not only contradicts what our district and the PIAA believe in, but it potentially hinders the opportunities for students

who have not violated any rule set forth by the PIAA. To prevent this from occurring, we believe there should be a distinction made between varsity and junior varsity teams when calculating Competition Classification Formula in the same way that the PIAA already does distinguish between the two, which is mentioned above. The intention of the rule was to promote fairness and competitive balance. Neither of which are at risk under the above-mentioned circumstances.

### Issue 4

**Were the correct number of success points applied for the 2019-2020 basketball season?**

Due to COVID-19, the PIAA State Basketball Championships were cancelled prior to the quarterfinal round. In fact, in the class 6A boys' championship four teams did not even play their second-round game. We do not believe the Competition Classification Formula was calculated properly when it comes to measuring the "Success Factor."

According to the Competition Classification Formula document, the PIAA provides on its website, the "Success Factor" assign points to teams based on their participation in various rounds of the state tournament. Teams must be assigned at least 6 points in order to be considered for a classification change.

For example, our team was given 4 points for "participating" in a state final, which we did during the 2018-2019 season. We were then given an additional 2 points for "participating" in the quarterfinal round of this year's tournament. However, the formula states that "schools will receive points based upon their highest finish in a post-season." The Dunmore girls' basketball team finished the season after the second round of the playoffs and never participated in or finished the quarterfinal. The tournament was postponed before we ever "participated" in the quarterfinal round.

In *Merriam-Webster Dictionary,* participation means "the action of taking part in something." It is unfair to charge a basketball program with participation in a quarterfinal game that never took place. Therefore, we do not believe we should have been assigned 2 points for this year's cancelled tournament.

Based on the reasons above, it is our position that the Dunmore High School girls' basketball team should not be reclassified for the 2020-2021 season. We maintain that the Competition Classification Formula was not calculated appropriately, and we do not believe the current calculation aligns with the values of the PIAA or within the spirit of the transfer rules. We respectively ask to be granted the right to continue to compete in Class AAA in girls' basketball.

Respectfully submitted,

Timothy Hopkins

7

Made in USA



**PENNSYLVANIA INTERSCHOLASTIC
ATHLETIC ASSOCIATION, INC.**

550 Gettysburg Road - P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708
(800) 382-1392 - (717) 697-0374
FAX (717) 697-7721
WEB SITE - www.piaa.org

May 11, 2020

Mr. Timothy Hopkins, Principal
Dunmore JR/SR High School
300 Warren Street
Dunmore, PA 18512

Dear Mr. Hopkins:

The purpose of this correspondence is to provide you with information regarding your appeal of the PIAA adopted competition formula in the sport of girls' basketball for the upcoming two-year cycle of school years 2020-21 and 2021-22. It is to your appeal and submitted documentation that we are providing this response.

In reviewing your information submitted for an appeal you have bought forward four points for us to respond. Issue 1 illustrates that transfer students were not part of the girls' varsity basketball team. Dunmore High School confirms these students played basketball at the sub-varsity level. This issue is dismissed since the competition formula does not recognize levels of senior high competition and the school submitted eligibility lists are for senior high eligible students.

Issue 2 and Issue 3 question if these students were athletic transfers and their levels of participation. By virtue of Dunmore HS requesting a decision on these students eligibility to the PIAA District 2 Committee and completing the athletic transfer waiver request forms, the decisions made by the District Committee confirm the students' intent to play athletics at Dunmore High School. The qualitative decision to play at the junior varsity or varsity level is a subjective one performed by each school's coaching staff and not whether the student was a transfer student or not. The District 2 Committee decisions confirm the eligibility of the students to participate at the senior high level of competition.

Issue 4 questions the validity of the Competition Classification Formula and the development and application of the competition formula is a Board of Directors' approved policy that was developed by the Executive Staff, has been discussed and approved by the Competition Committee and passed by the Board of Directors. The formula is in effect for all schools participating in the sports of football, girls' and boys' basketball.

Therefore, based upon the number of transfers and accumulated number of points, your appeal is denied. You have the opportunity to appeal this decision of the Executive Staff to the Board of Directors. The deadline for this appeal is 12:00 PM, Friday, May 15, 2020.

Your classification for the upcoming two–year cycle in the sport of girls' basketball is 4A.
Female Enrollment #'s: 163
Success points in previous cycle classification: 6
# of Transfers identified by PIAA eligibility lists: 2
Competition classification for 2020-2021 & 2021–2022 is 4A.

Dunmore HS
Appeal - Girls' Basketball
May 11, 2020

Thank you for your assistance and cooperation. It is appreciated.

Sincerely,

Dr. Robert A. Lombardi
Executive Director

RAL/bl

Cc:     PIAA Administrative Staff
        Frank M. Majikes, Chairman, PIAA District II

8

8

Made in USA



# DUNMORE JR/SR HIGH SCHOOL

BUCKS



BUCKS

MR. TIMOTHY HOPKINS
Principal

MRS. MARGARET HART
Assistant Principal

May 13, 2020

Dear Dr. Robert Lombardi,

Please accept this letter as an appeal of your May 11, 2020 decision by the Dunmore School District. Previously we had raised several issues that were not addressed appropriately in your decision.

In reviewing the regulations, constitution and bylaws we feel that our rights have been violated. The competition formula should not have been used retroactively. The definition of participation and athletic transfers were not appropriately utilized by your committee.

We intend to present testimony from fact witnesses regarding the issue of athletic transfers under the competition classification formula and would like to know how that would be allowed. We also have administrative testimony to establish that no change in classification would not provide the Dunmore School District with a competitive advantage over like size schools.

We believe that our School District has been unfairly and wrongfully reclassified. The District feels that this is a violation of our rights under the PIAA constitution and bylaws.

Sincerely yours,

Timothy Hopkins
Principal
Dunmore Jr/Sr High School

9

6

Made in USA





## DUNMORE JR/SR HIGH SCHOOL

BUCKS

BUCKS

Mr. Timothy Hopkins
Principal

Mrs. Margaret Hart
Assistant Principal

May 19, 2020

Board of Directors
Pennsylvania Interscholastic Athletic Association, Inc.
550 Gettysburg Road
P.O. Box 2008
Mechanicsburg, PA 17055-0708

Re:   Dunmore School District v. PIAA

Dear Board of Directors:

Please accept this appeal on behalf of the Dunmore School District to the change in its classification from 3A to 4A.   The reason for the reclassification is based upon a "Competition Classification Formula" which was adopted on October 2, 2019 by the PIAA "effective immediately."

We assert that the formula has been misapplied which results in a violation of the Constitution and By-Laws of this organization.   A violation of the Constitution may be asserted by the Principal, a member school, or the Board of Directors on its own motion.   The main charitable purpose of the PIAA is to "promote and support the educational values of interscholastic athletics and the high ideals of good sportsmanship." Article II, Section 1A.   This Board has a responsibility under the Constitution to interpret the provisions of the Constitution, By-Laws, policies and procedures and rules and regulations of the PIAA.   Article VII, Section 1(E).

### ISSUE I

### ATHLETIC TRANSFERS

Prior to October 2, 2019, the District was allowed to no have more than two (2) athletic transfers in basketball before affecting its classification to participate in basketball. Subsequently, as of October 2, 2019 the amendment changed the numerical formula to one (1) "athletic transfer."   (Competition Classification Formula.)

Pursuant to Article VI of the PIAA Constitution and By-Laws the purpose of the Article is to deter transfers and/or recruiting which are materially motivated in some way by an athletic purpose.   Students who make decisions as to what school to attend based upon factors relating to athletics defeats this objective.   Further, such decisions are detrimental to efforts to maintain competitive integrity and equity to prevent athletic recruiting and to  instill school loyalty.   The

Board of Directors
Page 2
May 19, 2020

By-Laws define a transfer as "<u>a situation in which a student seeks eligibility to participate in</u> <u>interscholastic athletics at a school other than the one at which the student was either enrolled or</u> <u>otherwise eligible.</u>" Article VI, Section 1A.

After the enactment of the Competition Classification Formula and its adoption on October 2, 2019, the PIAA retroactively applied the transfer reduction to students that had been deemed "athletic transfers" in 2017-2018 or 2018-2019.  Schools that were in compliance with the rule received a change in classification retroactively which is a violation of law.

In this case, the Dunmore School District had erroneously listed two (2) students as transfers in the 2017-2019 school years which would have been acceptable before the change in the regulations.

After receiving notification of the change in the Dunmore School District's classification for the 2020-2021 school year, the District reviewed the students who were alleged "athletic transfers", Emma Conte and Oliva Lynwood.

## EMMA CONTE

Emma Conte was the daughter of Richard Conte and Kim Conte who resided in the Riverside School District until they purchased a home in the Borough of Dunmore in the summer of 2019.  Emma had been a student of Riverside High School during her freshman year (2018-2019) and had never participated in the athletic program at Riverside School District.  When she enrolled in the Dunmore School District as a sophomore, on August 27, 2019, it was based solely on a change of residence of her parents and was not in any way motived by an athletic purpose.

If your review the Constitution and By-Laws of the PIAA, Article VI, Section 4 since the student did not participate in basketball for Riverside School District, she is eligible to participate as a sophomore in the Dunmore School District and would not be considered an athletic transfer.   This is further delineated under Article VI, Section 5C which states that the student must have participated within a period of one (1) year immediately preceding the date of transfer to be considered an athletic transfer.

## OLIVIA LYNWOOD

Olivia Lynwood was the daughter of Jaysa Lynwood and John Lynwood.  Her parents were separated and had joint custody on a 50/50 basis during the previously five (5) years since 2013.  She was 16 years of age when she changed schools at the request of her parents.  Olivia had participated in basketball at Scranton High School and played on the junior varsity team in the 2017-2018 school year.  Her parents were separated for the past five (5) years and had two (2) separate residences.  Her dad had resided in the Scranton School District and her mom resided in the Dunmore School District.  She was eligible for enrollment in either district based

upon dual residence.[1] Her parents requested that she enroll in the Dunmore School District for the 2018-2019 school year as they believed that would be in her best interest due to social issues.

According to the By-Laws, Article VI, Section 1A, due to the fact that Olivia Lynwood was eligible to participate in athletics in either the Dunmore School District (residence of mom) or Scranton School District (residence of dad), she was not a transfers but "otherwise eligible" If you review Article VI, Section 2C, the rule restates that where a student's parents are separated she is only considered a transfer if more than one transfer occurs between residences.  As a result, it was erroneous to list her as a transfer student.[2] The reason for her change in residence had nothing to due to athletics and she did not participate in the 2019-2020 school year.

If you review the "Competition Classification Formula" the document clearly states that a school will be penalized if there are "athletic transfers."  The rule states "any sports specific transfer will subject the student to a post-season ban for one (1) year."  It also states that in the previous two (2) year cycle, if the school district accepts transfer students by sport and gender in excess of one (1), they would move up a classification.  We submit that the Dunmore School District did not accept any transfer students for girls basketball.  In addition the PIAA has made or applied this rule retroactively which is unlawful.

## ISSUE II

**Whether or not the Dunmore School District should have been assigned six (6) Success Factor points for the 2018-2019 and 2019-2020 basketball seasons?**

In reviewing the success points assigned to the Dunmore School District for the 2018-2019 season, the Dunmore High School Girls Basketball Team was assessed four (4) points. This is based on the formula which provides for a point for participating in each round of the playoffs including the championship for a total of four (4) points.

Secondary to the COVID-19 crisis, the basketball season was never completed.  Based on the fact that our team only participated in the first round of the playoffs, we should have been assigned one (1) point.  However, the PIAA also charged the team an additional success point for qualifying for the quarterfinals which game was never held.  If you review the classification of schools under the Competition Classification Formula, the Success Factor is based on a scale which would include a point for "participation in each round of the playoffs."  In fact, under Section A, the formula states that "schools will receive points based upon their highest finish in a post-season."  The Dunmore Girls Basketball Team finished the season after the second round of the playoffs but never participated in or finished the quarterfinal.  (Emphasis added.)

However, the specific By-Laws state that a Success Factor is based upon points for "participation in a quarterfinal inter-district contest."  Our School District did not participate in

---

[1] Wyland v. West Shore School District, 52 A.3d 572 (2012)
[2] Dziewa v. PIAA,2009 WL 113419 (U.S. Dist. Ct. Eastern PA. 2009); PIAA By-Law Article VI Section 2, Paragraph B.

Board of Directors
Page 4
May 19, 2020

the quarterfinal contest as it was cancelled.  In <u>Merriam-Webster Dictionary,</u> participation means "the action of taking part in something."  It is inconsistent to charge a basketball program with participation in a quarterfinal game that never took place.

## ISSUE III

We believe that the Competition Classification Formula violates my client's right to equal protection under the Constitution.  Retroactive application of this new formula is a violation of rights without due process.  The ruling by the District Committee is not supported by any evidence and is capricious and arbitrary.  The School District has presented substantial and competent evidence that neither transfer was for an athletic purpose.  No evidence to the contrary was provided.

Finally, the District Committee denied our original appeal based upon the sole fact that Dunmore School District completed an athletic transfer waiver request form.  The Committee never discussed the status of the students or whether, in fact, they are athletic transfers. However, the Memorandum dated April 28, 2020 to the School District  from PIAA indicates that "a school may appeal its upgrade in competition classification by providing written documentation to the Executive Staff to illustrate the school received less than one (1) transfer." We did submit the proof that was requested yet that information was not considered.

The "Competition Classification Formula" specifically states that classification is based on:

1. **Enrollment Classification**
2. **Success Factor**
3. **Athletic Transfers**

The classification of schools regulations allow a school to appeal its upgrade in competition by providing documentation that verifies the change in classification will not provide them with a competitive advantage over like-sized schools.  However, the District Committee would not allow us to present any evidence that these transfers would not provide a competitive advantage over like-sized schools.  We submitted our rationale as required under the appeal regulations but it was totally disregarded.

Respectfully submitted,

Matthew D. Dempsey, Esquire

10

10

Made in USA

# PENNSYLVANIA INTERSCHOLASTIC
# ATHLETIC ASSOCIATION, INC.

550 Gettysburg Road • P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708
(800) 382-1392 • (717) 697-0374
FAX (717) 697-7721
WEB SITE: www.piaa.org

June 2, 2020

Mr. Timothy Hopkins, Principal
Dunmore Jr/Sr High School
300 Warren Street
Dunmore, PA 18512

Dear Mr. Hopkins:

The purpose of this correspondence is to provide you with information following the appeal hearing conducted on Wednesday, May 20, 2020 concerning the request of Dunmore Jr/Sr High School ("Dunmore") for relief from the application of the PIAA COMPETITION CLASSIFICATION FORMULA. The PIAA Board of Directors considered the written materials submitted by Dunmore and the testimony presented and arguments made during the hearing.  The hearing was conducted via video conference, and at the request of Dunmore, was closed to the public.

Persons testifying on behalf of Dunmore were Timothy Hopkins, Principal, and Ben O'Brien, girls' head basketball Coach. Emma Conte, a Dunmore student, and her mother, Kate Conte, provided testimony.  Dunmore was represented by Matthew Dempsey, Esq.

The issues presented for consideration by the Board of Directors were as follows:

1. Whether the PIAA correctly included two students as transfers when those students' participation was limited to junior varsity competition;

2. Whether the students were correctly classified as transfers regardless of their status within the Dunmore girls' basketball program;

3. Whether PIAA correctly applied the Success Factor to the 2019-2020 basketball season when, due to the COVID pandemic, the PIAA curtailed its inter-district championships before all Contests were played.

The Board of Directors made the following specific findings:

Mr. Timothy Hopkins, Principal
Dunmore Jr/Sr. High School
June 2, 2020
Page 2

1.     With a female student population of 163, Dunmore's girls' basketball Team qualified as a AAA school during the 2018-2019 and 2019-2020 classification cycle.

2.     Because of its on-court success, the PIAA executive staff determined that Dunmore's girls' basketball Team accumulated 6 competition points during the most recently completed classification cycle.

3.     Based on girls' basketball athletic eligibility lists submitted in an appropriate and required fashion by Dunmore, the PIAA administrative staff identified 2 students who potentially were received by Dunmore as transfer students during the cycle.

4.     Dunmore challenged the inclusion of these two students as transfers on the basis that one student maintained dual residency, with one residence at her mother's home in Dunmore, and another at her father's home in Scranton, where she attended high school during the 2017-2018 school year before enrolling at Dunmore beginning with the 2018-2019 school year.  That student participated on the junior varsity Team at Scranton.  The other student enrolled as a sophomore at Dunmore to begin the 2019-2020 school year after her parents purchased a home in that school district.  She did not participate in basketball at the school of her prior residence.

5.     Dunmore sought (and received) eligibility approval from PIAA District II for both of these students after each student submitted forms evidencing their intention to play athletics at Dunmore.  The District Committee determined that it was not likely that either's transfer was materially motivated by athletics.

6.     After considering each student's circumstances, the Board of Directors determined that the students should count as transfers for purpose of this policy.  Initially, it was recognized that a transfer need not be materially motivated by an athletic purpose to count as a transfer for purposes of this policy.  While the policy references "athletic transfers," that term is intended to pertain to ALL students who transfer and who then participate in a particular sport at the receiving school.  As stated in the policy, it applies if a school "accepts transfer students by sport...."  For purposes of this policy, then, the motivation behind the transfer is not a factor to consider.  Here, because both students did change schools and then participated on the Dunmore basketball Team, they count under the formula.

7.     Additionally, the fact that a student played on the junior varsity rather than varsity team is not relevant.  A qualitative decision as to whether a student plays at the junior varsity or varsity level at the school is a subjective one performed by each school's coaching staff and not a factor under the Competition

Mr. Timothy Hopkins, Principal
Dunmore Jr/Sr. High School
June 2, 2020
Page 3

Classification Formula if the student participated as a member of the school's basketball Team. The Board recognizes that junior varsity players can help to improve the Team's capabilities and success and, therefore, should be included in the count. Counting all transfers, regardless of the senior high level of participation, also deters schools from "stockpiling" players who may not yet be fully developed as underclassmen but who can help perpetuate success within a classification.

8.     The second argument raised by the school is that the Success Formula should not apply because Dunmore did not actually participate in a quarterfinal Contest. Under the Success Formula adopted by PIAA, points are assigned to Teams based on their level of achievement during the relevant classification cycle. For its success in having qualified to play in the 2018-2019 inter-district championship final contest, Dunmore earned 4 points. For its success in having qualified to play in the 2019-2020 inter-district quarterfinal Contest, Dunmore (and its scheduled opponent) earned 2 points. While the precise language of the policy does reference participation in a particular Contest, the policy did not contemplate that teams qualifying for a particular round in the tournament would not be able to participate in that round due to the Governor's edict closing all schools. Indeed, that has not happened in over 100 years of the tournament. But for that edict, all quarter-final contests would have been played.

In light of the unique circumstances of this year's tournament, the Board considered how to apply the policy to Teams that qualified for a particular round but did not actually play in that round. In relation thereto, the Board further considered the purposes of the policy itself (which was intended to be applicable to any Team whose success qualified it to participate in that round of the tournament). Finally, the Board considered whether application of the policy to Dunmore would be fair to it since it did not play in that round. Recognizing that playing the game itself would not have changed the minimum point level to be attained (both Dunmore and its opponent would earn two success points, regardless of who won the Contest been played), the Board then weighed that fact against the underlying purpose of the policy, which is to recognize consistent success and to move Teams to a level where competition would be more fair. Finally, the Board considered the question of consistent application of the policy and confirmed that it had applied the policy equally to all Teams that had qualified for this level of the tournament. In consideration of all these factors, the Board felt that it would not be unfair to Dunmore to recognize its success, to treat it the same as all other schools reaching the quarterfinals, and to assign points based on reaching the quarterfinals of the tournament.

9.     The third issue raised by the school was that neither girl's transfer was motivated by an athletic purpose. As discussed above, there was no finding that either transferred for an athletic purpose (had that occurred, the students

Mr. Timothy Hopkins, Principal
Dunmore Jr/Sr. High School
June 2, 2020
Page 4

themselves would have been ineligible to participate for one year) but that is not relevant to this policy, which applies to all students who change schools and then participate on a Team, not just those who transfer for athletic reasons.

On the basis of the foregoing, the Board of Directors, by a 23 - 6 vote, with 1 abstention, denied the Dunmore appeal. Consequently, its competition classification in the sport of girls' basketball for the 2020-2021 and 2021-2022 school years is 4A.

If there are any questions about this matter, please contact me at your convenience.

Sincerely,

Michael L. Solomon, Esq.
Director of Legal Affairs

MLS/djr

cc:   PIAA Board of Directors
      PIAA Administrative Staff
      Alan R. Boynton, Jr., Esq., PIAA Legal Counsel
      Matthew Dempsey, Esq., Dunmore High School Legal Counsel

**EXHIBIT B**

**Lenahan & Dempsey, P.C.**
By: Matthew D. Dempsey, Esquire
I.D. No. 34379
Lenahan & Dempsey Professional Building
Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: mdd@lenahandempsey.com

Attorneys for Plaintiff

MAURI B. KELLY
LACKAWANNA COUNTY

2020 JUN 23  A 9: 56

CLERKS OF JUDICIAL
RECORDS CIVIL DIVISION

| | | |
|---|---|---|
| **DUNMORE SCHOOL DISTRICT** | : | IN THE COURT OF COMMON PLEAS |
| 300 West Warren Street | : | OF LACKAWANNA COUNTY |
| Dunmore, Pennsylvania 18509 | : | |
| | : | CIVIL ACTION – LAW |
| Plaintiff | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA INTERSCHOLASTIC** | : | |
| **ATHLETIC ASSOCIATION** | : | NO. 20 CV 2417 |
| 550 Gettysburg Road | : | |
| P.O. Box 2008 | : | |
| Mechanicsburg, Pennsylvania 17055-0708 | : | |
| | : | |
| Defendant | : | |

**RULE TO SHOW CAUSE**

AND NOW, this 22ᵈ day of June, 2020, upon consideration of the foregoing petition, it is hereby

ordered that:

1.      A rule is issued upon the defendant/respondent, Pennsylvania Interscholastic Athletic

Association ("PIAA"), to show cause why the plaintiff/petitioner, Dunmore School District ("Dunmore"), is

not entitled to the relief requested;

2.      The defendant/respondent, PIAA, shall file an answer to the petition within ten days of service

upon the respondent;

3.      The petition shall be decided under Pa.R.C.P. 206.7;

4.      Depositions shall be completed within ▓▓ days of this date; and

60 (JAG)

5.     Notice of the entry of this order shall be provided to all parties by the plaintiff/petitioner,

Dunmore.

Rule Returnable the _18th_ day of _August_, 2020, at _____ __m. in Courtoom No.

_#4. HEARING to be held on the 25th day of August, 2020 @ 9:30 AM in Courtroom #4, LACKawanna County Courthouse._

BY THE COURT:

_____, J.

2

**Lenahan & Dempsey, P.C.**
By: Matthew D. Dempsey, Esquire
I.D. No. 34379
Lenahan & Dempsey Professional Building
Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: mdd@lenahandempsey.com

                                    Attorneys for Plaintiff

| | |
|---|---|
| **DUNMORE SCHOOL DISTRICT** : | IN THE COURT OF COMMON PLEAS |
| 300 West Warren Street : | OF LACKAWANNA COUNTY |
| Dunmore, Pennsylvania 18509 : | |
| : | CIVIL ACTION – LAW |
| Plaintiff : | |
| v. : | |
| : | |
| **PENNSYLVANIA INTERSCHOLASTIC** : | |
| **ATHLETIC ASSOCIATION** : | NO. |
| 550 Gettysburg Road : | |
| P.O. Box 2008 : | |
| Mechanicsburg, Pennsylvania 17055-0708 : | |
| : | |
| Defendant : | |

## ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of the Petition of

the Plaintiff for Preliminary Injunction, it is hereby ORDERED that the Defendant is enjoined for the duration

of the preliminary injunction from taking any action to change the Dunmore girls' basketball team's

classification from Class 3A to Class 4A for the 2020-2021 and 2021-2022 school years.

SO ORDERED.

BY THE COURT:

_____, J.

**Lenahan & Dempsey, P.C.**
By: Matthew D. Dempsey, Esquire
I.D. No. 34379
Lenahan & Dempsey Professional Building
Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: mdd@lenahandempsey.com

Attorneys for Plaintiff

MAURI B. KELLY
LACKAWANNA COUNTY

2020 JUN 23  A 9: 56

CLERKS OF JUDICIAL
RECORDS CIVIL DIVISION

| | | |
|---|---|---|
| **DUNMORE SCHOOL DISTRICT** | : | IN THE COURT OF COMMON PLEAS |
| 300 West Warren Street | : | OF LACKAWANNA COUNTY |
| Dunmore, Pennsylvania 18509 | : | |
| | : | CIVIL ACTION – LAW |
| Plaintiff | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA INTERSCHOLASTIC** | : | |
| **ATHLETIC ASSOCIATION** | : | NO. |
| 550 Gettysburg Road | : | |
| P.O. Box 2008 | : | |
| Mechanicsburg, Pennsylvania 17055-0708 | : | |
| | : | |
| Defendant | : | |

## PLAINTIFF'S PETITION FOR PRELIMINARY INJUNCTION

NOW COMES the plaintiff, Dunmore School District ("Dunmore"), by and through its counsel,

Lenahan & Dempsey, P.C., by Matthew D. Dempsey, Esquire, and for its Petition for Preliminary Injunction

against the defendant, Pennsylvania Interscholastic Athletic Association ("PIAA"), hereby sets forth the

following averments in support of its request for injunctive relief in accordance with the plaintiff's Petition for

Preliminary Injunction and accompanying proposed Order. The plaintiff, Dunmore, hereby demands injunctive

relief pursuant to Pennsylvania Rule of Civil Procedure 1531, and requests a preliminary injunction enjoining

the defendant, PIAA, from reclassifying Dunmore from Class 3A to Class 4A for the sport of girls' basketball

for the 2020-2021 and 2021-2022 school-years in violation of the plaintiff's constitutional rights to due process

and the equal protection of the laws, and in further violation of the spirit, purpose, and plain language of PIAA's

4

rules, regulations, policies, Constitution, and By-Laws. Dunmore demands the said injunctive relief in order to prevent immediate and irreparable harm that cannot be adequately compensated by money damages, because greater injury will occur from refusing to grant the injunction than from granting it, because a preliminary injunction will restore Dunmore and PIAA to their *status quo* as it existed before PIAA's wrongful conduct, because Dunmore is likely to prevail on the merits, because a preliminary injunction is reasonably suited to abate PIAA's offending activity, and because the public interest will be served, not harmed, if the preliminary injunction is granted, and in support thereof sets forth the following averments, which are further detailed in Plaintiff's Complaint and the accompanying exhibits attached thereto:

1.    Pennsylvania Rule of Civil Procedure 1531 provides: "[a] court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice." Pa. R.Civ.P. No. 1531(a). Furthermore, "[i]n determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require." *Ibid.*

2.    Under Pennsylvania law, "[t]o obtain a preliminary injunction, a petitioner must establish that: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted." *Brayman Const. Corp. v. Com., Dep't of Transp.*, 608 Pa. 584, 601 (2011) (citing *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount,*

*Inc.*, 573 Pa. 637, 646–47 (2003)). Moreover, "a party seeking preliminary injunctive relief need not establish the anticipated harm with certainty." *Weeks v. Dep't of Human Servs.*, 222 A.3d 722, 733 (Pa. 2019). Rather, "[t]he purpose of a preliminary injunction is to "prevent imminent and irreparable harm that *might* occur before the merits of a case can be heard and determined." *Ibid.* (citing *SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 500-01 (2014)) *(quotations removed)*.

3.      PIAA's arbitrary and irrational interpretation and application of its policies unfairly and unlawfully deprived Dunmore of its guaranteed constitutional rights, as detailed in Plaintiff's Complaint. Granting Dunmore's requested injunctive relief and issuing a preliminary injunction is necessary to prevent Dunmore's current and future irreparable injuries, particularly because these harms cannot be adequately compensated through money damages. Dunmore has suffered and will continue to suffer the unlawful and injurious deprivation of its guaranteed rights if the Court refuses to issue a preliminary injunction, whereas granting Dunmore's Petition and issuing a preliminary injunction in accordance with the proposed Form of Order will effectively combat and/or eliminate the harm complained of, without causing any injury to PIAA. Therefore, greater injury will occur from refusing to issue Dunmore's requested preliminary injunction than from granting it.

4.      The injunctive relief Dunmore seeks will restore Dunmore and PIAA to their *status quo* as it existed before PIAA's wrongful conduct in reclassifying Dunmore's girls' basketball program, namely by maintaining and restoring Dunmore's Class 3A classification, which existed before the reclassification at issue. Restoring Dunmore's Class 3A classification will restore the situation that existed before PIAA's wrongful conduct, therefore preserving the *status quo* as it existed prior to PIAA's reclassification of the Dunmore girls' basketball team as Class 4A.

5.      Dunmore is likely to prevail on the merits because PIAA's interpretation and application of the Competitive Classification Formula were arbitrary and irrational, and PIAA's adopted means of serving its

interest in competitive balance were arbitrary, unfair, and not rationally related to the interest, as detailed in Plaintiff's Complaint. PIAA's actions therefore unlawfully denied Dunmore of its constitutional rights of due process and the equal protection of the laws. PIAA's actions plainly meet the elements of the laws identified in Plaintiff's Complaint and Plaintiff's Petition for Preliminary Injunction because PIAA violated Dunmore's due process and equal protection rights in an arbitrary and irrational way that flies in the face of the spirit, purpose, and plain language of the PIAA's Competitive Classification Formula, Constitution, and By-Laws.

6.      Furthermore, Dunmore is likely to succeed on the merits of this case because PIAA violated Dunmore's guaranteed rights to due process and the equal protection of the laws, giving rise to a claim for deprivation of constitutional rights, as detailed in Plaintiff's Complaint. PIAA retroactively applied and enforced its rules and regulations through unfair and arbitrary means that do not rationally serve the underlying purpose. Crucially, Dunmore was provided insufficient notice and was not given opportunity to comport its conduct in accordance with PIAA rules and regulations, in violation of Dunmore's due process rights.

7.      Injunctive relief is the best and most reasonably suited means to abate PIAA's unlawful conduct by enjoining PIAA from taking actions that violate Dunmore's constitutional rights, as well as PIAA's own Constitution, By-Laws, and Competition Classification Formula, as detailed in Plaintiff's Complaint. Injunctive relief is particularly necessary in this case because damages would not adequately address Dunmore's injuries, as detailed in Plaintiff's Complaint.

8.      The requested injunctive relief will serve, not harm, the public interest, as detailed in Plaintiff's Complaint. The Dunmore girls' basketball team has a no-cut policy and accepts all student-athletes who are interested in joining the team, including those students who merely join the team for socialization purposes. PIAA's Competition Classification Formula and its interpretation thereof harms the public interest because it implies that a girls' basketball program with any expectation of success would potentially need to restrict non-athletic transfers from joining in order to remain in its classification. This implication not only contradicts

Dunmore's efforts to provide a welcoming, no-cut program that recognizes that students participate in sports for many non-athletic purposes, but also potentially hinders opportunities for students who have not violated any rule set forth by PIAA.

WHEREFORE, the plaintiff respectfully requests the Court grant its Petition for Preliminary Injunction and issue a preliminary injunction enjoining the defendant from reclassifying the Dunmore girls' basketball team to from Class 3A to Class 4A, pending a decision on the merits of the plaintiff's claims in this matter.

Respectfully submitted,

LENAHAN & DEMPSEY, P.C.

Matthew D. Dempsey, Esquire
Attorneys for Plaintiff, Dunmore School District

Lenahan & Dempsey Professional Building, Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234

## CERTIFICATE OF SERVICE

AND NOW, this 18th day of June, 2020, I, Mathew D. Dempsey, Esquire, hereby served a copy

of the foregoing Petition via certified mail on the parties of record as follows:

**PENNSYLVANIA INTERSCHOLASTIC**
**ATHLETIC ASSOCIATION**
550 Gettysburg Road
P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708.

LENAHAN & DEMPSEY, P.C.

Matthew D. Dempsey, Esquire
Attorneys for Plaintiff, Dunmore School District

Lenahan & Dempsey Professional Building, Suite 400
116 North Washington Avenue
P.O. Box 234
Scranton, Pennsylvania 18501-0234

9

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the

Unified Judicial System of Pennsylvania that require filing confidential information and documents differently

than non-confidential information and documents.

Submitted by: Lenahan & Dempsey, P.C.

Signature: _____

Name: Matthew D. Dempsey, Esquire

Attorney No: 34379

MAURI B. KELLY
LACKAWANNA COUNTY
2020 JUN 23  A  9: 56
CLERKS OF JUDICIAL
RECORDS CIVIL DIVISION

**EXHIBIT C**



JAMES A. GIBBONS
JUDGE

(570) 963-6575
FAX (570) 963-6576

**Commonwealth of Pennsylvania**
45th Judicial District

June 24, 2020

Matthew D. Dempsey, Esquire
mdd@lenahandempsey.com

Allan R. Boynton, Jr., Esquire
Aboynton@mcneeslaw.com

**RE:** *Dunmore School District v. Pennsylvania Interscholastic Athletic Association;*
*2020-CV-2417*

Dear Counsel:

As you know, I issued the Rule to Show Cause in this matter. As a result, I am assigned to hear it.

I am reminded, however, that the coach of the Dunmore Girls basketball team, Dan O'Brien, and I are cousins of the second degree. Consequently, I am required by Code of Judicial Conduct Rule 2.11(A)(2)(c) & (d) to disqualify myself.

I am therefore, advising our Court Administrator of my disqualification by copy of this letter and requesting that it be reassigned without delay in order to avoid jeopardizing your August 25, 2020 hearing date.

I regret missing the opportunity to work with you both in this matter.

Very truly yours,

James A. Gibbons

Cc: Stacey Harris, Deputy Court Administrator

200 NORTH WASHINGTON AVENUE, SCRANTON, PENNSYLVANIA 18503

**EXHIBIT D**

| | |
|---|---|
| **DUNMORE SCHOOL DISTRICT** | :   IN THE COURT OF COMMON PLEAS |
| 300 West Warren Street | :   OF LACKAWANNA COUNTY |
| Dunmore, Pennsylvania 18509 | : |
| | :   CIVIL ACTION – LAW |
| Plaintiff | : |
| v. | : |
| | : |
| **PENNSYLVANIA INTERSCHOLASTIC** | : |
| **ATHLETIC ASSOCIATION** | :   NO.     20 CV 2417 |
| 550 Gettysburg Road | : |
| P.O. Box 2008 | : |
| Mechanicsburg, Pennsylvania 17055-0708 | : |
| | : |
| Defendant | : |

## ACCEPTANCE OF SERVICE

AND NOW, this 22nd day of June 2020, I hereby accept service of Plaintiff's Complaint

and Plaintiff's Petition for Preliminary Injunction on behalf of Defendant Pennsylvania Interscholastic

Athletic Association, and certify that I am authorized to do so.

McNees Wallace & Nurick, LLC

By _Alan R Boynton Jr_

Alan R. Boynton, Jr.

Attorney for Defendant Pennsylvania Interscholastic
Athletic Association

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date a true and correct

copy of the foregoing document was emailed and served via first class

mail, postage prepaid and e-mail, upon the following:

Matthew D. Dempsey, Esquire
Lenahan & Dempsey, P.C.
Lenahan & Dempsey Professional Bldg., Ste. 400
116 North Washington Ave.
P.O. Box 234
Scranton, PA 18501-0234


s/Carol Steinour Young
Carol Steinour Young


Dated:  June 29, 2020